**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martinez**

Civil Action No. 11-cv-01468-WJM-BNB

SOLIDFX, LLC,

      Plaintiff,

v.

JEPPESEN SANDERSON, INC.,

      Defendant.

---

**DEFENDANT JEPPESEN SANDERSON, INC.'S MOTION TO EXCLUDE**
**TESTIMONY OF DONA FLAMME AND MELINDA HARPER**
**REGARDING LOST APP PROFITS AND LOST BUSINESS VALUE**

---

Robert N. Miller
Michael Sink
PERKINS COIE LLP
1900 16th Street, Suite 1400
Denver, CO  80202-5255
Tel:  (303) 291-2300
Email:  rmiller@perkinscoie.com

Craig S. Primis, P.C.
John C. O'Quinn
Gregory L. Skidmore
Michael A. Glick
KIRKLAND & ELLIS LLP
655 15th Street, N.W.
Washington, DC 20005
Tel:  (202) 879-5000
Email:  cprimis@kirkland.com

January 10, 2014

*Attorneys for Jeppesen Sanderson, Inc.*

## TABLE OF CONTENTS

**Page**

BACKGROUND ................................................................................................................2

ARGUMENT ....................................................................................................................4

I.    Ms. Flamme's Proffered Testimony Regarding Lost App Profits Should Be
Excluded. ...............................................................................................................4

    A.    Ms. Flamme Is Not Qualified To Provide The Proffered Opinion
Testimony. ..................................................................................................4

        1.    Ms. Flamme is not qualified under Rule 702.................................4

        2.    Ms. Flamme also cannot testify to financial projections under Rule
701................................................................................................6

    B.    Ms. Flamme's Opinions Are Inherently Unreliable. .................................9

II.    Ms. Harper's Proffered Testimony Regarding Lost App Profits and Lost Equity
Value Should Be Excluded. ...............................................................................12

    A.    Ms. Harper Improperly Relies on Ms. Flamme. ....................................12

    B.    Ms. Harper's Opinions Suffer From The Same Flaws As Ms. Flamme's............13

    C.    Ms. Harper's Proffered Opinions Regarding Lost Equity Value Should Be
Excluded. ................................................................................................14

CONCLUSION................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*103 Investors I, L.P. v. Square D Co.*,
  470 F.3d 985 (10th Cir. 2006) ................................................................. 4

*Broadcort Capital Corp. v. Summa Med. Corp.*,
  972 F.2d 1183 (10th Cir. 1992) ............................................................... 5

*Cook v. Rockwell Int'l Corp.*,
  580 F. Supp. 2d 1071 (D. Colo. 2006) ..................................................... 7

*Daubert v. Merrell Dow Pharms.*,
  509 U.S. 579 (1993) ............................................................................. 4, 9

*Eberli v. Cirrus Design Corp.*,
  615 F. Supp. 2d 1357 (S.D. Fla. 2009) ................................................... 12

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997) ........................................................................... 11, 14

*HealthOne of Denver, Ind. v. UnitedHealth Grp. Inc.*,
  2012 WL 94678 (D. Colo. Jan. 12, 2012) ............................................... 12

*James River Ins. Co. v. Rapid Funding, LLC*,
  658 F.3d 1207 (10th Cir. 2011) ............................................................... 9

*King v. Allstate Ins. Co.*,
  2013 WL 3943607 (D. Colo. July 31, 2013) ............................................ 6

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) ............................................................................. 4, 5

*LifeWise Master Funding v. Telebank*,
  374 F.3d 917 (10th Cir. 2004) ......................................................... passim

*Lightning Lube, Inc. v. Witco Corp.*,
  4 F.3d 1153 (3d Cir. 1993) ...................................................................... 8

*Malloy v. Monahan*,
  73 F.3d 1012 (10th Cir. 1996) ................................................................. 8

*Mitchell v. Gencorp Inc.*,
  165 F.3d 778 (10th Cir. 1999) ................................................................. 4

*Mooring Capital Fund, LLC v. Knight*,
   388 Fed. App'x 814 (10th Cir. 2010).................................................................... 7, 8

*Sargon Enters., Inc. v. Univ. of S. Cal.*,
   288 P.3d 1237 (Cal. 2012) ......................................................................................... 10

*State Office Sys., Inc. v. Olivetti Corp. of Am.*,
   762 F.2d 843 (10th Cir. 1985)..................................................................................... 8

*Truck Ins. Exch. v. MagneTek, Inc.*,
   360 F.3d 1206 (10th Cir. 2004)................................................................................... 14

*Von der Ruhr v. Immtech Int'l, Inc.*,
   570 F.3d 858 (7th Cir. 2009)........................................................................................ 7

*Water Pik, Inc. v. Med-Sys., Inc.*,
   2012 WL 27596 (D. Colo. Jan. 5, 2012) ..................................................................... 9

*Zenith Elecs. Corp. v. WH-TV Broad. Corp.*,
   395 F.3d 416 (7th Cir. 2005)............................................................................... 10, 13

**Rules**

Fed. R. Evid. 701 ........................................................................................................... 9

Fed. R. Evid. 702 ..................................................................................................... 6, 11

SolidFX seeks more than $80 million in damages in this case—a staggering sum based on sales projections and profit margins for iPad apps that are essentially made up.  In fact, SolidFX never turned a profit, never sold an iPad app of any kind, and had no business plan to sell three of the four apps that now form the basis for its extraordinary claim for damages.  In support of its made-for-litigation figures, SolidFX offers Dona Flamme, the company's President and CEO, as an expert in financial projections and damages calculations.  In truth, SolidFX knows that Ms. Flamme is not, and cannot be qualified as, a damages expert under Rule 702 and that the opinions she offers are inherently unreliable.  And Ms. Flamme's same lack of qualifications bar SolidFX from making an end-run around Rule 702 and offering her unreliable opinions under Rule 701 (which SolidFX has indicated it will attempt to do).

Attempting to cure these infirmities, SolidFX seeks to provide Ms. Flamme's speculative lost profits projections to a retained damages expert—Melinda Harper—so that Ms. Harper may then tell the jury that Ms. Flamme's lost profits projections are valid.  Expert testimony cannot be laundered in this way.  While Ms. Harper plans to testify that she conducted an "independent evaluation" of Ms. Flamme's estimates, the truth is that Ms. Harper did not make a single substantive adjustment to any aspect of any lost profits projection offered by Ms. Flamme—not a single one.   Whatever Ms. Harper's qualifications might be, ***Ms. Flamme's*** lost profits projections are pure speculation unsupported by a reliable scientific methodology.  SolidFX cannot correct that problem by rubber-stamping them with Ms. Harper's say-so, especially when Ms. Harper accepts Ms. Flamme's numbers in their entirety.

At its core, SolidFX's damages theory is a house of cards, based on speculative numbers derived from an unreliable methodology and then cloaked in the misleading imprimatur of a

professional expert who did not make a single change to those projections. This is exactly the type of unreasoned analysis that requires this Court to exercise its gatekeeping function and screen witnesses from the jury under *Daubert*. Jeppesen respectfully requests that (a) Ms. Flamme not be permitted to testify as an expert under Rule 702, (b) Ms. Flamme's projections be excluded as impermissible lay testimony under Rule 701, and (c) Ms. Harper not be permitted to offer Ms. Flamme's speculative financial projections as her own under Rule 702.[1]

## BACKGROUND

Jeppesen publishes terminal charts—specialized maps that depict airports and their surroundings. In 2009, Jeppesen entered into a License and Cooperation Agreement ("Agreement") with SolidFX that gave SolidFX a limited license to display Jeppesen's terminal charts on a class of devices the Agreement refers to as "e-book viewers." Pursuant to that Agreement, SolidFX sold two portable e-reader devices—the SolidFX FX8 and FX10—both of which feature a black-and-white device manufactured by iRex Technologies embedded with SolidFX's software. In total, SolidFX has sold roughly 800 FX8 and FX10 devices since 2009. (Flamme Dep. (Ex. A) 362:8-18; 430:11-16.)

In this case, SolidFX contends that the Agreement extends beyond the FX8 and FX10 and gives it the right to display Jeppesen's terminal charts on the iPad and other tablet computers. SolidFX's damages claim is based primarily on a projection of iPad app sales that SolidFX asserts it would have realized had Jeppesen allowed SolidFX to develop apps that displayed Jeppesen's charts on the iPad. In total, SolidFX alleges that it would have developed and sold four apps for the iPad, including two apps that would have displayed Jeppesen's charts

---

[1] Pursuant to D.C.COLO.LCivR 7.1, Jeppesen conferred with SolidFX prior to filing its motion and SolidFX does not agree to the relief sought. Jeppesen does not believe an evidentiary hearing is necessary to resolve this motion.

(FX View HD and FX View Enterprise) and two apps that would not have used or displayed Jeppesen's charts and would not have required any Jeppesen support (FX Maintain and FX Mobile).  In total, SolidFX claims damages of over $80 million related to these purported apps.

In support of its claim, SolidFX intends to offer the testimony of two witnesses: (1) Dona Flamme, SolidFX's President and CEO; and (2) Melinda Harper, a retained expert.  SolidFX disclosed Ms. Flamme as a non-retained expert expected to testify regarding SolidFX's "injury and damages, including but not limited to lost profits."  (SolidFX Amended Disclosures (Ex. B), at 3.)  Ms. Flamme did not submit an expert report, but her lost profits projections are reflected in a series of spreadsheets produced in discovery, which purport to show quarterly sales and cost projections for each of the four apps for 2010 to 2014.  (*See, e.g.,* Ex. C.)  Ms. Flamme intends to testify that SolidFX, which had never previously sold any iPad apps, and sold only 800 devices embedded with its chartviewing software, would have sold more than 579,000 of the new apps between 2010 and 2014, garnering more than $71 million in revenue and $29 million in profit.

Ms. Harper's projections for SolidFX's lost app profits—which are reflected in the three expert reports she has submitted—are identical in every respect to the projections set forth in Ms. Flamme's spreadsheets.  (*See, e.g.*, Report of M. Harper, Nov. 13, 2012 (excerpt at Ex. D).)  Ms. Harper admits that she "adopted" Ms. Flamme's estimates, and for each of the four hypothetical apps, Ms. Harper's projected sales quantities and prices are exactly the same as Ms. Flamme's. (Harper Dep. (Ex. E) 35:7-16.)  Using these same inputs, Ms. Harper opines—identical to Ms. Flamme—that SolidFX incurred lost profits related to iPad apps in the amount of $29.5 million for the period from 2010 through 2014.  (Ex. D at 2.)  Additionally, using Ms. Flamme's projected app sales as her basis, Ms. Harper opines that SolidFX would have been worth $51.3

3

million at the end of 2014, and says that Jeppesen is responsible to pay that amount as lost equity value, on top of SolidFX's supposed lost profits.  (*Id.*)  In total, Ms. Harper opines that SolidFX suffered $80.8 million in lost app sales and equity value (before interest or discounting).

## ARGUMENT

## I.    Ms. Flamme's Proffered Testimony Regarding Lost App Profits Should Be Excluded.

As the proponent of Ms. Flamme's expert testimony, SolidFX bears the burden of proving that (1) Ms. Flamme is qualified to render the proffered opinion, and (2) Ms. Flamme's opinion is reliable.  *Daubert v. Merrell Dow Pharms.,* 509 U.S. 579, 588 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-49 (1999); *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006).  Ms. Flamme fails on both counts.  Because any inadequacy in the proof on either element renders the entire affected opinion inadmissible, Ms. Flamme's expert testimony must be excluded.  *Mitchell v. Gencorp Inc.,* 165 F.3d 778, 782 (10th Cir. 1999).

### A.    Ms. Flamme Is Not Qualified To Provide The Proffered Opinion Testimony.

#### 1.    Ms. Flamme is not qualified under Rule 702.

Rule 702 allows expert testimony only where the "witness [is] qualified as an expert by knowledge, skill, experience, training, or education."  Specifically, an expert must possess "such skill, experience or knowledge in [the subject matter of the witness's testimony] as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth."  *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004).  Ms. Flamme falls well short of that standard for at least three reasons:

*First*, as Ms. Flamme admits, she has no experience in damages analysis.  She has never served as an expert in litigation before and has never been retained by anyone to provide expert

financial projections or business valuation.  (Flamme Dep. 677:14-18, 678:2-12.)  Even outside litigation, Ms. Flamme has no expertise projecting profits or valuing businesses.  To the contrary, she admitted she had never made sales projections for any product sold directly to consumers aside from a few projects in business school and a "minor little endeavor" early in SolidFX's business, *id.* 678:22-679:14, 679:22-680:11, and that she merely assisted in two business valuations during a prior employment, *id.* 658:11-13, 661:2-4, 663:13-21.  Furthermore, there is no evidence in the record that Ms. Flamme has taught courses or lectured on profit projections or damages, nor has she been published in the field.  *See LifeWise*, 374 F.3d at 928.  Even SolidFX's retained expert, Ms. Harper, conceded that Ms. Flamme was not qualified to perform business valuations and criticized her methodology as inconsistent with "the standards that the business valuation community is looking at these days." (Harper Dep. 197:13-198:11, 213:5-13).

> **Second**, Ms. Flamme's education and general work experience do not qualify her to testify about iPad app sales and/or make projections regarding app or software markets.  It is well-settled that an expert must demonstrate "knowledge and experience **of the relevant discipline**." *Kumho*, 526 U.S. at 149 (emphasis added).  Although Ms. Flamme holds an MBA and rose to mid-level management positions at a few technology companies, she has absolutely no experience marketing or pricing iPad apps.  (Flamme Dep. 560:21-561:7, 561:11-14.)  Nor is she a trained economist of the type ordinarily retained to develop complex and sophisticated financial projections like the ones SolidFX seeks to offer in this case.  Ms. Flamme's mere "general experience and education" are not sufficient to qualify her under Rule 702. *Broadcort Capital Corp. v. Summa Med. Corp.*, 972 F.2d 1183, 1195 (10th Cir. 1992).

> **Third**, Ms. Flamme's experience as SolidFX's President and CEO does not qualify her to

testify regarding lost iPad app sales.  SolidFX's prior products—the FX8 and FX10—were sold as an integrated package of hardware and software, not a standalone app sold via the Apple app store (the method by which Ms. Flamme assumes SolidFX would have sold its apps).  (Flamme Dep. 362:8-18; 560:16-20, 787:22-788:4.)  Indeed, Ms. Flamme has no experience (at SolidFX or elsewhere) selling apps through the Apple/iPad business model.  (*Id.* 560:21-561:7.)  And even accounting for SolidFX's prior, non-app products, Ms. Flamme's past experience selling a grand total of 800 FX8 and FX10 devices cannot possibly give her the necessary expertise to opine that SolidFX would have sold more than a half million iPad apps garnering tens of millions of dollars in profit.  Indeed, Ms. Flamme admits that SolidFX has had less than a million dollars in revenue in its entire history and has never realized a profit.  (*Id.* 584:7-14; 715:21-22.)

There is simply nothing in the record or Ms. Flamme's background to suggest that she has special "knowledge, skill, experience, training, or education" regarding damages from lost app sales.  Fed. R. Evid. 702.  Rather, given Ms. Flamme's "utter lack of any familiarity, knowledge, or experience with damages analysis," *LifeWise*, 374 F.3d at 928, her opinions will not assist the jury in this case.  *See King v. Allstate Ins. Co.*, 2013 WL 3943607, *3 (D. Colo. July 31, 2013) (excluding purported experts with no experience in relevant industry).

2.   <u>Ms. Flamme also cannot testify to financial projections under Rule 701.</u>

Ms. Flamme's lack of qualifications and experience also disqualify her from offering testimony regarding purported lost app profits under the guise of Rule 701 lay testimony. Ms. Flamme's projections involve complex assumptions over a 5-year timeframe for products that ***SolidFX never sold***.  Such forward-looking estimates necessarily entail "scientific, technical, or other specialized knowledge" that is only appropriate from a qualified expert

6

testifying under Rule 702, and Ms. Flamme's lack of experience selling the very products that form the basis of her lost profits testimony distinguishes her from those owners or officers with extensive experience who have been allowed to offer such testimony under Rule 701.

Indeed, the Tenth Circuit and this Court have repeatedly rejected attempts by business owners to overreach and offer expert testimony for which they lack expertise.  *LifeWise*, 374 F.3d at 929-30, makes the distinction clear.  There the Tenth Circuit affirmed the exclusion of lost profits testimony from a party's CEO where the testimony was not "based on [the company's] actual operating history" as distinguished from those cases where "the owners had sufficient personal knowledge of their respective businesses ***and*** of the factors on which they relied to estimate lost profits."  *Id.* (emphasis in original); *see also Von der Ruhr v. Immtech Int'l, Inc.*, 570 F.3d 858, 862-65 (7th Cir. 2009) (affirming exclusion of testimony from plaintiff's founder and CEO that company would have realized "millions of dollars in profits from a brand new [product]").  Similarly, in *Mooring Capital Fund, LLC v. Knight*, 388 Fed. App'x 814 (10th Cir. 2010), the Tenth Circuit affirmed the exclusion of testimony from a business's president because she "had no experience in . . . and had never conducted a business with respect to" the product that was the subject of her lost profits opinions, and her testimony "went beyond straightforward common-sense calculations."  *Id.* at 825.  Likewise, in *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071 (D. Colo. 2006), the court barred real estate agents from offering lay testimony regarding the value of a property when "they could only state broad opinions encompassing transactions in which they did not participate."  *Id.* at 1178.

By contrast, in those limited circumstances where business owners or officers have been permitted to offer testimony regarding lost sales under Rule 701, such testimony was either

based on the witness's considerable experience and/or involved straightforward, common-sense estimates, far removed from the speculative calculations offered by Ms. Flamme.  For instance, in *Malloy v. Monahan*, 73 F.3d 1012 (10th Cir. 1996), the Tenth Circuit credited the business owner's "substantial experience" of "at least fifteen years" in the specific business he was opining on in holding that it was not an abuse of discretion to admit his testimony regarding lost future profits.  *Id.* at 1016; *see also Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1175-79 (3d Cir. 1993) (allowing company president to testify regarding lost profits in light of his decades of experience with similar business relationships).  Similarly, in *State Office Systems, Inc. v. Olivetti Corp. of America*, 762 F.2d 843 (10th Cir. 1985), the court held that it was not an abuse of discretion to allow a company's president to testify as to lost profits where the officer had "lengthy experience in marketing and selling [the company's] computers" and the profit calculation simply equaled the company's profit per computer times 29 lost sales.  *Id.* at 846-47.

None of these circumstances apply here.  Ms. Flamme has *no* experience—let alone "substantial" or "lengthy" experience—marketing or selling iPad apps, either at SolidFX or elsewhere.  *See Mooring*, 388 Fed. App'x at 824 (distinguishing testimony based on "what the witness had personally observed" from "opinion testimony regarding possible future occurrences").  Indeed, apart from a "pretty minor little endeavor" involving a "small screen-saver component," Ms. Flamme did not identify a single stand-alone software product that she has ever marketed for any company.  (Flamme Dep. 679:4-7, 680:7-11.)  Moreover, Ms. Flamme's projections require sophisticated estimates and complex judgments regarding, *inter alia*, the conversion rate from existing products to hypothetical new products, the addressable market, the identification and pricing of competitors in the market, and the retention

and renewal of customers—all over a five-year timeframe and in an evolving technology market. This is a far cry from the "simple mathematical equations that anyone with a grade-school education could understand" and for which Rule 701 testimony is permissible. *See Water Pik, Inc. v. Med-Sys., Inc.*, 2012 WL 27596, at *3 (D. Colo. Jan. 5, 2012). Thus, unlike the type of "straightforward opinion as to lost profits . . . based on [the company's] actual operating history" that the Tenth Circuit approved in *LifeWise*, 374 F.3d at 930, Ms. Flamme's proffered testimony is neither straightforward nor based on SolidFX's actual history. To allow Ms. Flamme to offer such opinion as a lay witness would permit SolidFX to evade the "reliability requirements set forth in Rule 702 . . . through the simple expedient of proffering an expert in lay witness clothing"—which Rule 701 was designed to eliminate. Fed. R. Evid. 701, Adv. Comm. Notes, 2000 Amdt.; *James River Ins. Co. v. Rapid Funding, LLC,* 658 F.3d 1207, 1216 (10th Cir. 2011) (party may not use Rule 701 as an "end-run around the reliability requirements of Rule 702").

**B.      Ms. Flamme's Opinions Are Inherently Unreliable.**

SolidFX also cannot demonstrate that Ms. Flamme's purported expert opinions are "based on sufficient facts or data" or are "the product of reliable principles and methods," as required by *Daubert* and Rule 702.

In the absence of any prior history of app sales on which to base her projections, Ms. Flamme instead makes a series of subjective assumptions to reach her conclusion that SolidFX would have sold tens of thousands of apps each year (as compared to just 800 total sales of its prior products). Indeed, Ms. Flamme candidly explained that she "used my experience and my feelings" to identify projected sales that she "felt was reasonable." (*Id.* 767:8-16; 795:10-796:22.) But Ms. Flamme's "feelings" are not the subject of proper expert testimony—

9

especially where those feelings bear no resemblance to SolidFX's historical performance, size, existing products, or market share.  *See Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005) (excluding lost profits methodology amounting to "expert intuition").

For instance, Ms. Flamme fails to offer any reliable means by which she concludes that "around 30 percent" of the world's pilots would be using SolidFX's apps by the end of 2014. (*See* Flamme Dep. 592:10-594:19.)  Such estimate is entirely divorced from anything SolidFX realized in its actual experience.  *See Sargon Enters., Inc. v. Univ. of S. Cal.*, 288 P.3d 1237, 1255 (Cal. 2012) (affirming exclusion of expert who "opined that [the plaintiff's] market share would have increased spectacularly over time to levels far above anything it had ever reached").  Similarly, while purporting to base her projections for SolidFX's sales in part on the number of times Jeppesen's free apps were downloaded, *see* Flamme Dep. 562:13-21, Ms. Flamme fails to offer any analytical basis or methodology—such as a regression analysis or analysis of companies selling comparable products—for her extrapolation, instead choosing an arbitrary number from within Jeppesen's total.  *See LifeWise*, 374 F.3d at 928 ("[S]tatistics, without an analytic foundation are, virtually meaningless.") (citation omitted).  And Ms. Flamme does not even adjust her projections to account for pricing by competition, claiming that SolidFX's apps would defy the most basic economic principles of supply and demand by maintaining the same sales volume regardless of the price of the closest substitute—Jeppesen's apps, which are available free of charge.  (*Id.* 730:3-731:15.)  Ms. Flamme admitted that she "did not do any formal studies" to determine how many customers would switch between apps at a given price, instead concluding that within a "range from, you know, zero to $150-ish kind of," Jeppesen's price would not affect SolidFX's sales.  (*Id.* 732:14-16, 736:18-737:1, 755:12-17, 761:6-8.)

Exemplifying Ms. Flamme's speculative approach are her projections for SolidFX's two hypothetical apps that would not even have displayed Jeppesen's charts—FX Mobile and FX Maintain.  Despite the absence of any connection between those would-be apps and the conduct at issue in this dispute, Ms. Flamme reasons that their inclusion in the damages calculation is appropriate because Jeppesen's "conduct prevented [SolidFX] from having the resources to take our businesses in those directions."  (*Id.* 568:6-10.)  Yet Ms. Flamme cannot point to a single contemporaneous business plan to develop those apps or any historical sales of similar products by SolidFX.  (*See id.* 724:21-725:18; 764:11-21.)  By her own admission, the first written sales projections for these apps were prepared only ***after*** the initiation of this litigation.  (*Id.* 725:13-18.)  Nor can Ms. Flamme identify any download data or other benchmark for products similar to these apps.  (*Id.* 772:5-7; 772:11-16.)  Instead, Ms. Flamme admits that she "kind of came up with a, what [she] thought was a, reasonable estimate."  (*Id.* 766:22-767:1.)

At best, Ms. Flamme's projections for all four of SolidFX's hypothetical apps represent mere hopes rather than the results of scientific analysis.  Despite bearing the imprimatur of specificity (down to the nearest unit of sale and dollar of profit), her opinions and projections are derived from nothing more than her own "feelings" and speculation regarding apps that SolidFX never developed.  "Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert."  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).  Instead, where, as here, there is "too great an analytical gap" between the evidence and the opinion proffered, that opinion is must be excluded.  *Id.*; *see also* Fed. R. Evid. 702, Adv. Comm. Notes to 2000 Amdt. ("The trial court's gatekeeper function requires more than simply 'taking the expert's word for it.'").

Finally, Ms. Flamme fails to satisfy any of the other *Daubert* considerations.   As in *LifeWise*, "[her] methodology was not in regular usage for predicting future profits, was not peer reviewed, has no uniform usage in any known industry, and is capable of manipulation to achieve virtually any desired result."  374 F.3d at 929.  Ms. Flamme's approach—premised as it is on rank speculation regarding the app market and the potential success of her own company's hypothetical apps—lacks any indicia of reliability.  Accordingly, she should not be allowed to offer opinion testimony regarding lost profits from app sales.

## II.   Ms. Harper's Proffered Testimony Regarding Lost App Profits and Lost Equity Value Should Be Excluded.

### A.      Ms. Harper Improperly Relies on Ms. Flamme.

In an effort to prop up Ms. Flamme's speculative projections regarding lost profits, SolidFX offers Ms. Harper, a retained expert.  Ms. Harper's rubber stamp, however, is not a substitute for a proper expert methodology.

As this Court has recognized, "an expert may not merely parrot what the other expert said, vouch for that expert, or become that expert's 'spokesman.'"  *HealthOne of Denver, Ind. v. UnitedHealth Grp. Inc.*, 2012 WL 94678, at *6 (D. Colo. Jan. 12, 2012); *see also Eberli v. Cirrus Design Corp.*, 615 F. Supp. 2d 1357, 1364 (S.D. Fla. 2009) (expert "must . . . not merely regurgitate another expert's opinion").   But that is exactly what Ms. Harper does here while purporting to validate Ms. Flamme's opinions.  For instance, when asked about Ms. Flamme's projection of 8,000 sales of the FX View HD app in the first quarter of 2011, Ms. Harper admitted that the proper projection "could be 6,000 . . . could be four [thousand].  It could be 10 [thousand]; it could be 12 [thousand]."  (Harper Dep. 110:13-111:10.)  Nonetheless, Ms. Harper deferred to Ms. Flamme's "judgment" based on Ms. Flamme's supposed "knowledge of the

industry." (*Id.*)  Similarly, with regard to projections for the hypothetical non-chartviewing apps (FX Maintain and FX Mobile), Ms. Harper admits that she never saw pre-litigation business plans or other documents created by SolidFX laying out its strategy for these apps, relying instead on conversations that Ms. Flamme purportedly had with unspecified third parties regarding potential pricing.  (*Id.* 144:3-145:17, 146:14-148:7.)

It is inescapable that Ms. Harper's projections are ***identical in every respect*** to Ms. Flamme's.  And, as shown above, Ms. Flamme lacks the education, experience, and methodology to be able to present her figures as an expert.  Yet Ms. Harper blindly relies on Ms. Flamme's speculative sales projections.  If SolidFX wanted Ms. Harper to testify as to SolidFX's potential sales of its hypothetical iPad apps, it should have asked Ms. Harper to conduct her own analysis.  For its own strategic reasons, however, SolidFX attempted a shortcut, leaving an unqualified and biased witness to invent numbers out of thin air and using Ms. Harper as a sort of expert validator.  That approach is unscientific, unreliable, impossible to replicate, and inadmissible under basic rules of evidence.

**B.  Ms. Harper's Opinions Suffer From The Same Flaws As Ms. Flamme's.**

It is no answer for SolidFX to claim that Ms. Harper did an "independent evaluation" of Ms. Flamme's numbers.  To the extent Ms. Harper conducted such evaluation, it suffers from the same fundamental flaws as Ms. Flamme's and, like Ms. Flamme's, results in conclusory assertions regarding purported app sales that have no relation to existing data.  Like Ms. Flamme, Ms. Harper arbitrarily apportions SolidFX a share of the downloads Jeppesen experienced with its free iPad apps—without purporting to employ any objective or analytical methodology to identify the chosen share.  (*See* Harper Dep. 111:12-22.)  And Ms. Harper could not identify ***any***

actual sales data for non-Jeppesen chartviewing apps. (Harper Dep. 101:5-17; *see Zenith*, 395 F.3d at 418 (excluding proposed lost profits expert who failed to assess actual sales of alternative products).) Similarly, Ms. Harper fails to offer any reliable rationale to substantiate her conclusion that SolidFX would have captured 37.5% of the domestic marketing for terminal chartviewing apps by 2014. (Ex. D at Table #3.) Finally, like Ms. Flamme, Ms. Harper insisted—against all rational economic principles—that SolidFX's sales projections would be unaffected by the price of Jeppesen's competing apps. (Harper Dep. 91:19-92:10; 100:7-18.)

At bottom, Ms. Harper fails to demonstrate that her projections are any more "the product of reliable principles and methods" than Ms. Flamme's speculative projections are. *Truck Ins. Exch. v. MagneTek, Inc.*, 360 F.3d 1206, 1211 (10th Cir. 2004) (quoting Fed R. Evid. 702). Rather, like Ms. Flamme, Ms. Harper's projections are again connected to existing data only by Ms. Harper's "*ipse dixit*," and should be excluded. *Gen. Elec.*, 522 U.S. at 146.

### C.   Ms. Harper's Proffered Opinions Regarding Lost Equity Value Should Be Excluded.

In addition to excluding Ms. Harper's flawed opinion regarding lost ***profits*** on the sale of iPad apps for the period from 2010 through 2014, the Court should exclude her from offering an opinion regarding SolidFX's purported lost ***equity value*** because that opinion relies on her (and Ms. Flamme's) same flawed lost profits projections. Put simply, if Ms. Harper's projections for SolidFX's lost app sales are not reliable, using those same projections to calculate SolidFX's lost equity value cannot be reliable either.

Ms. Harper purports to calculate SolidFX's lost equity value at the end of 2014 by performing discounted cash flow and comparable companies analyses. But in doing so, Ms. Harper uses her (and Ms. Flamme's) projected lost profits for 2014 as the baseline input in

her lost equity value projection.  (Harper Dep. 163:3-13, 165:11-16.)  As a result, the same problems that plague Ms. Flamme's and Ms. Harper's lost profits projections similarly infect Ms. Harper's lost equity value projection.  (*Id.* 166:10-15, 179:12-18 (admitting that if her 2014 projections are inflated, the lost equity value would also be inflated).)

In addition to employing unreliable sales estimates, Ms. Harper's proffered lost equity value opinion is premised on at least two other improper assumptions.  **First**, Ms. Harper's opinion is premised in part on projected revenues from SolidFX's chartviewing apps for the post-2014 period, which wrongly assumes that Jeppesen would continue licensing its terminal charts to SolidFX for display in its apps after 2014.  (*Id.* 156:10-21.)  The parties' Agreement only provides for an initial 5-year term—which expires at the end of 2014—and there is no factual basis for inferring that Jeppesen is going to renew this contract.  Ms. Harper admits that if SolidFX does not have access to Jeppesen's charts after 2014, it would adversely affect SolidFX's lost equity value, *see id.* 166:16-167:5, and any projection that assumes such access is unreliable.  **Second**, Ms. Harper's lost equity value projection is premised on the assumption that SolidFX would have developed the non-chartviewing apps (FX Mobile and FX Maintain).  For the reasons stated above, SolidFX's sales projections for those apps are entirely speculative and lack any relation to facts in the record.  *See supra* § I.B.  Any calculation of lost equity value premised on sales of those apps is similarly unreliable and should be excluded.

## CONCLUSION

For the foregoing reasons, Jeppesen respectfully requests that the Court exclude both:

1.      Ms. Flamme's testimony regarding SolidFX's lost profits on the sale of iPad apps;

2.      Ms. Harper's testimony regarding SolidFX's lost profits on the sale of iPad apps and lost equity value.

Dated: January 10, 2014                Respectfully submitted,

                                       s/ *Robert N. Miller*
                                       Robert N. Miller
                                       Michael A. Sink
                                       Perkins Coie LLP
                                       1900 16th Street, Suite 1400
                                       Denver, CO  80202-5255
                                       Tel:  (303) 291-2300
                                       Email:  rmiller@perkinscoie.com

                                       Craig S. Primis, P.C.
                                       John C. O'Quinn
                                       Gregory L. Skidmore
                                       Michael A. Glick
                                       Kirkland & Ellis LLP
                                       655 15th Street, N.W.
                                       Washington, DC 20005
                                       Tel:  (202) 879-5000
                                       Email: cprimis@kirkland.com

                                       *Attorneys for Defendant*
                                          *Jeppesen Sanderson, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of January, 2014, I electronically filed a true and correct copy of the foregoing **DEFENDANT JEPPESEN SANDERSON, INC.'S MOTION TO MOTION TO EXCLUDE TESTIMONY OF DONA FLAMME AND MELINDA HARPER REGARDING LOST APP PROFITS AND LOST BUSINESS VALUE** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresse(s):

- **Michael A. Sink**
  msink@perkinscoie.com,

- **John Allen Francis**
  john.francis@dgslaw.com,
  sharon.smith@dgslaw.com

- **Kenzo Sunao Kawanabe**
  kenzo.kawanabe@dgslaw.com,
  patricia.henson@dgslaw.com

- **Robert Nolen Miller**
  rmiller@perkinscoie.com,
  rmiller-efile@perkinscoie.com

- **Michael Glick**
  michael.glick@kirkland.com

- **Lauren Michele Mitchell**
  lauren.mitchell@dgslaw.com,
  rebecca.gibson@dgslaw.com

- **John Caviness O'Quinn**
  john.oquinn@kirkland.com

- **Craig S. Primis**
  cprimis@kirkland.com,
  ghjones@kirkland.com

- **Shannon Wells Stevenson**
  shannon.stevenson@dgslaw.com,
  brigid.bungum@dgslaw.com

- **Gregory Skidmore**
  gskidmore@kirkland.com

s/ *Robert N. Miller*
Robert N. Miller
PERKINS COIE LLP
1900 16th Street, Suite 1400
Denver, CO  80202-5255
Tel:  303.291.2300
Fax:  303.291.2400
Email:  rmiller@perkinscoie.com

*Attorneys for Defendant*
  *Jeppesen Sanderson, Inc.*