**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martinez**

Civil Action No. 11-cv-01468-WJM-BNB

SOLIDFX, LLC,

    Plaintiff,

v.

JEPPESEN SANDERSON, INC.,

    Defendant.

---

**DEFENDANT JEPPESEN SANDERSON, INC.'S MOTION TO EXCLUDE
TESTIMONY OF WILLY SHIH
REGARDING THE POTENTIAL FOR SOLIDFX'S BUSINESS GROWTH**

---

    SolidFX has designated Willy Shih, a personal friend of SolidFX's owners Jeff McDonald and Donna Flamme, to offer a purported expert opinion regarding SolidFX's potential for business growth. But friendship is not a sufficient basis for an expert opinion. Rather, an expert opinion must be based on ***both*** sufficient facts or data ***and*** a reliable methodology. Mr. Shih's opinion does not satisfy either of these requirements.

    Although he claims to be offering an opinion about SolidFX's potential for business growth, Mr. Shih does not know the most basic facts about SolidFX—he does not know what products it sold and what products it was planning to sell; he does not know the price at which it was planning to sell those products; he has never seen SolidFX's sales figures or sales projections and does not know if SolidFX ever hit its sales projections; he has never reviewed a

SolidFX business plan; and he knows nothing about the market that SolidFX would have been in, including the identity of the competing companies and products in that market. Mr. Shih likewise has identified no discernable methodology for reaching his conclusion, much less one that is generally accepted. Rather, Mr. Shih has done little more than take limited information he gleaned through his relationship with Dr. McDonald and Ms. Flamme and spin it into an expert opinion that a business he knows next to nothing about would be a success. In other words, he asks this Court to "take his word for it." As courts have long held, this is not a proper basis for expert testimony. Because Mr. Shih's opinion is not based on sufficient facts or data, and is not the product of a reliable methodology, it is inadmissible and should be excluded.[1]

## BACKGROUND

On March 22, 2012, SolidFX designated Willy Shih as a non-retained expert pursuant to Fed. R. Civ. P. 26(a)(2)(C). (SolidFX's Supp. and Rebuttal Disclosures (Ex. A) at 2-6.) Mr. Shih, a professor at Harvard Business School, is a "good friend" of SolidFX's founders Jeff McDonald and Donna Flamme, a friendship that includes having dinner every two to three months and gathering on holidays such as Thanksgiving and Easter on multiple occasions. (Shih Dep. (Ex. B) at 267:12-15, 268:8-17; McDonald Dep. (Ex. C) at 36:5-6.)

SolidFX intends to introduce testimony from Mr. Shih on two topics, only one of which is relevant to this motion: "the potential for SolidFX's business growth." (Ex. A at 3.)[2] Mr. Shih's conclusory opinion that "SolidFX had strong potential for business growth" is purportedly

---

[1] Pursuant to D.C.COLO.LCivR 7.1, Jeppesen conferred with SolidFX prior to filing its motion and SolidFX does not agree to the relief sought. Jeppesen does not believe an evidentiary hearing is necessary to resolve this motion.

[2] SolidFX has also designated Mr. Shih as an expert with respect to "the use of terms and products in the high technology industry and the rapidly changing nature of that industry." Mr. Shih's opinions regarding that topic are not the subject of this motion. SolidFX initially designated Mr. Shih on a third topic as well, but has since withdrawn that designation.

based on his personal working relationship with Dr. McDonald and Ms. Flamme at Kodak and Silicon Graphics Inc., large companies that are nothing like the small start-up SolidFX, as well as his untested beliefs that "[t]he iPad would have been a lynchpin for business growth," and "[i]nnovative and disruptive technologies often include efforts by small companies." (*Id.* at 5.)

Because Mr. Shih was designated as a non-retained expert under Rule 26(a)(2)(C), he did not file an expert report containing his analysis and conclusions. After Jeppesen challenged SolidFX's disclosure of Mr. Shih as inadequate, *see* ECF No. 98, SolidFX argued that Mr. Shih was not required to file an expert report because his testimony would be limited to his own "past experience" and "factual knowledge as a lay witness." (4/24/12 Hr'g Tr. (Ex. D) 50:15-16, 51:12-13.) Magistrate Judge Boland accepted this representation by SolidFX's counsel, and limited Mr. Shih's testimony accordingly:

> I take Mr. Kawanabe [SolidFX's counsel] at his word that this witness will testify based upon percipient facts, and opinions drawn from those percipient observations. And he will be limited, as a treating physician would be limited, to testimony based on personal knowledge of the facts and opinions regarding causation and prognosis based on examination and treatment of the patient, as a treating physician would be.
>
> However, as the court said in *Morris against Wells Fargo Bank*, 2010 Westlaw 2501078, when a treating physician—or, here, Dr. Shih—intends to offer expert testimony not based on personal observations, a written report is required. So, if Dr. Shih is going to limit his expert opinions to those things which he is allowed to do as a percipient witness, his disclosure is fine. ***He is, however, precluded from going beyond that.*** And I take—as I say, I take Mr. Kawanabe at his word that he intends to follow that line.

(*Id.* 59:13-60:6 (emphasis added).) Accordingly, Mr. Shih's expert testimony (if any) is limited to his own percipient knowledge.

3

## ARGUMENT

**I.    Mr. Shih's Proffered Testimony Regarding SolidFX's Potential For Future Growth Is Inherently Unreliable And Should Be Excluded.**

SolidFX bears the burden of proving that Mr. Shih's opinion regarding SolidFX's potential for future growth is "based on sufficient facts or data" and is "the product of reliable principles and methods." *Daubert v. Merrell Dow Pharms.,* 509 U.S. 579, 595 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-49 (1999); Fed. R. Evid. 702.  "[T]he [proponent of expert testimony] must show that the method employed by the expert in reaching the conclusion is scientifically sound ***and*** that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements."   *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999) (emphasis added).  As SolidFX cannot satisfy its burden on either prong, Mr. Shih's opinion should be excluded.  *Id.* at 782 ("Under *Daubert,* any step that renders the analysis unreliable renders the expert's testimony inadmissible.") (quotation omitted).

**A.    Mr. Shih's Opinion Is Not Based On Sufficient Facts Or Data.**

Mr. Shih's opinion is not based on sufficient facts or data.  Mr. Shih is attempting to offer an opinion about whether SolidFX would have grown and succeeded as a business had it been permitted to market an iPad app using Jeppesen's proprietary terminal charts.  But Mr. Shih knows almost nothing about SolidFX's business or the products it wanted to sell.  As Mr. Shih testified, what he knows about SolidFX has come through informal personal interactions with his friends Dr. McDonald and Ms. Flamme—primarily social dinners and holidays, along with a few isolated emails.  (Shih Dep. at 340:9-341:2.)  Mr. Shih was never a consultant or employee of SolidFX, (*id.* 340:22-341:2; McDonald Dep. 37:3-8), and he lacks even the most basic knowledge about the company, its products, and its business:

4

**Mr. Shih lacks basic knowledge about SolidFX's existing and future products.**

- Mr. Shih has never seen a written SolidFX business plan and has never reviewed any SolidFX plan for future growth. (Shih Dep. at 190:10-15; 298:7-12.)

- Mr. Shih does not know how many different products SolidFX sold. (*Id.* 194:1-8.)

- Mr. Shih did not know that SolidFX had two different iRex readers for displaying Jeppesen terminal charts—one with an 8-inch screen and one with a 10-inch screen. (*Id.* 193:19-22.)

- Mr. Shih has no knowledge about any of the apps SolidFX claims it would have developed (including FX View, FX Enterprise, FX Maintain, and FX Mobile). (*Id.* 298:13-17, 300:16-21.)

- Mr. Shih does not know at what price SolidFX was planning to sell its apps. (*Id.* 294:6-19.)

**Mr. Shih has never reviewed SolidFX's sales figures or sales projections.**

- Mr. Shih knows nothing about SolidFX's sales projections. Mr. Shih never reviewed SolidFX sales projections and does not know if SolidFX met any of its sales projections. (*Id.* 212:10-16, 297:14-17.)

- Mr. Shih has never reviewed documents reflecting SolidFX's sales figures and did not know how many total units they had sold. (*Id.* 221:1-10.)

**Mr. Shih lacks basic knowledge of SolidFX's business relationships, including its relationship with Jeppesen.**

- Mr. Shih has no knowledge of or involvement with SolidFX's business relationships, including its relationship with Jeppesen. Mr. Shih did not attend any meetings between SolidFX and Jeppesen, did not participate on any phone calls between SolidFX and Jeppesen, did not help SolidFX prepare for any meetings with Jeppesen, has never seen any documents or presentations prepared by SolidFX for Jeppesen, and has never seen any documents or presentations prepared by Jeppesen and given to SolidFX. (*Id.* 188:19-189:20; 341:3-11.)

- Mr. Shih has never seen the contract between SolidFX and Jeppesen, nor has he discussed that contract with SolidFX. (*Id.* 165:4-8; 194:9-13; 346:15-347:5.)

- Mr. Shih does not know whether SolidFX ever entered into a contract with any commercial customer. (*Id.* 223:22-224:2.)

5

**Mr. Shih lacks basic knowledge about the market for SolidFX's products and SolidFX's competitors.**

- Mr. Shih has no knowledge of any of the companies or products that competed with (or would have competed with) SolidFX by selling a product that renders terminal charts electronically, including Foreflight, Lido, Navtech, WingX, and Global Nav Source. (*Id.* 216:1-218:2; 291:18-292:2.)

- Mr. Shih does not know of any suppliers of terminal charts other than Jeppesen, including NACO, Lido, and Navtech. (*Id.* 161:17-18; 292:11-12.)

**Mr. Shih has no personal experience in the aviation industry or with the electronic display of terminal charts.**

- Mr. Shih has no experience working in the aviation industry, including no experience licensing intellectual property in the aviation industry or licensing intellectual property in terminal charts, which was a key part of SolidFX's business. (*Id.* 50:2-10.)

- Mr. Shih has never used an iPad app that displays terminal charts, including Jeppesen's app. (*Id.* at 261:12-16.)

- Mr. Shih testified that he is not a "target customer" of SolidFX. (*Id.* 205:8-9.)

**Mr. Shih does not know critical information about the owners of SolidFX.**

- Mr. Shih does not know if Dr. McDonald and Ms. Flamme have owned any other businesses, much less if any such businesses were successful. (*Id.* 209:17-20)

Mr. Shih's complete lack of knowledge regarding SolidFX's business renders his opinion about SolidFX's potential for future growth inherently unreliable. "Under Rule 702, admissible expert testimony must be based on 'actual knowledge and not subjective belief or unsupported speculation.'" *Lovato v. Burlington N. & Santa Fe Ry. Co.*, No. CIV.A. 00-RB-2584CBS, 2002 WL 1424599, at *5 (D. Colo. June 24, 2002) (quoting *Mitchell,* 165 F.3d at 780). Mr. Shih has no such actual knowledge; his expert opinion should therefore be excluded. *See, e.g.*, *JMJ Enters., Inc. v. Via Veneto Italian Ice, Inc.*, 1998 WL 175888 (E.D. Pa. Apr. 15, 1998) (excluding an expert opinion regarding forecasted business success because the expert "knew

6

almost nothing" about the company and its competitors, "knew very little about [the relevant] industry," and "did not review any data on actual sales"), *aff'd,* 178 F.3d 1279 (3d Cir. 1999).

Mr. Shih's complete lack of knowledge on these topics is particularly problematic given that the Court has expressly limited him to reaching expert conclusions based on his own percipient observations. Because SolidFX disclosed Mr. Shih pursuant to Rule 26(a)(2)(C) and did not provide an expert report for him, he is limited to conclusions "based upon percipient facts, and opinions drawn from those percipient observations." (Ex. D at 59:10-60:7.) And SolidFX has conceded that Mr. Shih's testimony would be so limited. (*See id.* at 50-51.) Mr. Shih thus cannot avoid his own lack of knowledge by relying on other documents or evidence, as many experts can.

If nothing else, Rule 702 and *Daubert* require that an expert "employ[ ] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*, 526 U.S. at 152. SolidFX has provided no basis to support the idea that even a business school professor can opine on the potential growth or success of a business without looking at a company's business plan, sales figures or sales projections, or without having the most basic knowledge about a company's products, competitors, and market. As Mr. Shih reached his opinion without considering *any* of these critical inputs, his opinion is unreliable and should be excluded.

### B. Mr. Shih's Opinion Is Not The Product Of A Reliable Methodology.

Mr. Shih's conclusion regarding SolidFX's supposed potential for business growth also is not the product of a reliable methodology. This provides an independent basis for excluding his testimony under Rule 702. *Truck Ins. Exch. v. MagneTek, Inc.*, 360 F.3d 1206, 1211 (10th Cir.

2004); Fed R. Evid. 702 (c). Indeed, Mr. Shih has not articulated any discernable methodology for his conclusion regarding SolidFX's potential. Mr. Shih did not review any documents produced in this case (Shih Dep. 257:1-2), any deposition testimony (*id.* 256:20-22), or any relevant publications in forming his opinions (*id.* 260:10-15). Rather, Mr. Shih's conclusion rests on nothing more than "untestable say-so" and "*ipse dixit*" that has long been held to be inadmissible. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 421 (7th Cir. 2005) (affirming exclusion of expert whose conclusion was based on his "untestable say-so"); *see also* Fed. R. Evid. 702, Adv. Comm. Notes to 2000 Amdt. ("The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'"); *E.E.O.C. v. Bloomberg L.P.*, 2010 WL 3466370, at *15 (S.D.N.Y. 2010) (excluding opinion "supported by what appears to be a 'because I said so' explanation").

Mr. Shih's deposition testimony reveals the inherent unreliability of his conclusion that SolidFX had "great potential for business growth." Mr. Shih identified a number of purported bases for this conclusion—only to later testify that he had not properly considered those bases. For example, Mr. Shih testified that one basis for his conclusion was "the SolidFX initial sales trajectory." (Shih Dep. 200:16-18.) But Mr. Shih admitted that he has ***never even seen*** SolidFX's sales figures and he ***does not know*** how many units SolidFX has sold. (*Id.* 221:1-10). His knowledge about SolidFX's sales is limited to what he learned from dinner conversations where Dr. McDonald and Ms. Flamme said they had sold "dozens" of units. (*Id.* 220:3-15.) Dinner-table conversation, especially at this level of generality, is not a proper methodology for analyzing a company's sales trajectory for potential for growth.

Mr. Shih also claims that SolidFX "addressed an obvious market need" and got a "strong market reaction." (*Id.* 200:13-18.) But Mr. Shih's testimony reveals that he performed no market analysis whatsoever, much less one that is testable and generally accepted in the field. *See 103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006) (citing *Daubert*, 509 U.S. at 593-94). Indeed, Mr. Shih does not know the most basic information that would be needed to conduct such a market analysis, including the competitors in the market for electronic terminal chart apps (*id.* 216:1-218:2; 291:18-292:2), or even fundamental information about the supposed products or apps SolidFX might have developed to compete in this market (*id.* 193:19-22; 294:6-19; 298:13-17, 300:16-21).

Finally, Mr. Shih claims that being a small company would work to SolidFX's benefit and that it could have used the iPad as a "lynchpin for business growth." (Ex. A at 5.) Such generalities provide no support for an expert opinion about future business growth. *See Sunlight Saunas, Inc. v. Sundance Sauna, Inc.*, 427 F. Supp. 2d 1022, 1030 (D. Kan. 2006); *JMJ Enters.*, 1998 WL 175888, at *7. Moreover, Mr. Shih went on to concede the obvious points that there are "many disadvantages" of being a small company, including "lack of capital and resources" (Shih Dep. 232:18-233:5), and that a great number of companies that develop iPad apps do not succeed (*id.* 227:22-228:21).

Indeed, even the one basis about which Mr. Shih does have knowledge—his prior work experience with Dr. McDonald and Ms. Flamme—is not a reliable input for his expert opinion. Mr. Shih opines that because Dr. McDonald and Ms. Flamme did good work for him in mid-level roles at large companies—Kodak and Silicon Graphics—the small start-up company they independently owned would have been a success. But as courts have held, even "[p]rior

9

success with a *similar* business generally does not provide ample information to calculate lost profits for a new business because conditions vary with each business venture." *Euroholdings Capital & Inv. Corp. v. Harris Trust & Sav. Bank*, 602 F. Supp. 2d 928, 936 (N.D. Ill. 2009) (emphasis added) (limiting expert testimony). Neither Mr. Shih nor SolidFX provide any basis to support the idea that success in completely different roles at a *completely different* type of company would automatically translate into success at a small, unproven start-up company.

At bottom, Mr. Shih has done nothing more than take his personal beliefs about his friends Dr. McDonald and Ms. Flamme to reach a conclusory and wholly unsupportable opinion that their start-up company—about which he knows almost nothing—would be a success. Such a "subjective, conclusory approach" is not admissible under Rule 702. *See* Fed. R. Evid. 702, Adv. Comm. Notes to 2000 Amdt. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec.,* 522 U.S. at 146. Here, there is no data supporting Mr. Shih's opinion, much less any reliable, testable methodology applied to data. Mr. Shih's opinion is inadmissible under Rule 702.

### C. Permitting Mr. Shih To Testify Regarding SolidFX's Potential For Growth Would Unfairly Prejudice Jeppesen.

This Court should also exclude Mr. Shih's unreliable testimony because it would be unfairly prejudicial. Mr. Shih is a professor at Harvard Business School. There is thus a genuine risk that the jury will be influenced by his testimony, no matter how unreliable and unsupportable his opinions are. "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible

prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." *Daubert,* 509 U.S. at 595 (citations omitted). The Court should exercise such control here. As the Tenth Circuit has held, an expert's "years of experience and other qualifications do not overcome . . . [the] lack of independent investigation *in this case*." *Mooring Capital Fund, LLC v. Knight*, 388 F. App'x 814, 820 (10th Cir. 2010) (emphasis added) (citing *United States v. Nacchio,* 555 F.3d 1234, 1258 (10th Cir. 2009) (en banc)). Because Mr. Shih's opinion is inherently unreliable, the risk of prejudice far outweighs its probative value, and the opinion should be excluded. *See* Fed. R. Evid. 403; *C.A. Assocs. v. Dow Chem. Co.*, 918 F.2d 1485, 1490 (10th Cir. 1990) (affirming exclusion of expert testimony under Rule 403 because it risked "significant delay, confusion and prejudice").

## II.  SolidFX Cannot Avoid The Requirements Of Rule 702 By Attempting To Offer Mr. Shih's Opinion On SolidFX's Future Potential As A Lay Witness.

SolidFX has stated that it may attempt to avoid the requirements of Rule 702 by having Mr. Shih testify regarding SolidFX's potential for future success as a lay witness. But, as the Tenth Circuit has held, a party may not engage in such an "end-run around the reliability requirements of Rule 702." *James River Ins. Co. v. Rapid Funding, LLC,* 658 F.3d 1207, 1216 (10th Cir. 2011). Projecting the future success of a business—especially a start-up business with no track record of success like SolidFX—goes well beyond what Mr. Shih "had personally observed" and is instead "opinion testimony regarding possible future occurrences." *Mooring Capital Fund*, 388 F. App'x at 824. The Tenth Circuit has made clear that such testimony "could be provided only by qualified experts" applying reliable methodology to sufficient and reliable data under Rule 702. *Id.* Indeed, SolidFX's disclosure of Mr. Shih as an expert demonstrates that even it recognizes that a lay witness is not qualified to offer an opinion about the potential

11

success of a new and unestablished business.  To allow Mr. Shih to offer such an opinion as a lay witness would allow SolidFX to evade the "reliability requirements set forth in Rule 702 . . . through the simple expedient of proffering an expert in lay witness clothing"—a strategy that Rule 701 was designed to eliminate.  *James River Ins.*, 658 F.3d at 1216 (quoting Fed. R. Evid. 701, Adv. Comm. Notes to 2000 Amdt.).

## CONCLUSION

For the foregoing reasons, Jeppesen respectfully requests that the Court exclude Mr. Shih's testimony regarding SolidFX's potential for future business growth.


Dated: January 10, 2014					Respectfully submitted,

								s/ *Robert N. Miller*
								Robert N. Miller
								Michael A. Sink
								Perkins Coie LLP
								1900 16th Street, Suite 1400
								Denver, CO  80202-5255
								Tel:  (303) 291-2300
								Email:  rmiller@perkinscoie.com

								Craig S. Primis, P.C.
								John C. O'Quinn
								Gregory L. Skidmore
								Michael A. Glick
								Kirkland & Ellis LLP
								655 15th Street, N.W.
								Washington, DC 20005
								Tel:  (202) 879-5000
								Email: cprimis@kirkland.com

								*Attorneys for Defendant*
								  *Jeppesen Sanderson, Inc.*

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 10th day of January, 2014, I electronically filed a true and correct copy of the foregoing **DEFENDANT JEPPESEN SANDERSON, INC.'S MOTION TO MOTION TO EXCLUDE TESTIMONY OF WILLY SHIH REGARDING THE POTENTIAL FOR SOLIDFX'S BUSINESS GROWTH** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresse(s):

- **Michael A. Sink**
  msink@perkinscoie.com,

- **John Allen Francis**
  john.francis@dgslaw.com,
  sharon.smith@dgslaw.com

- **Kenzo Sunao Kawanabe**
  kenzo.kawanabe@dgslaw.com,
  patricia.henson@dgslaw.com

- **Robert Nolen Miller**
  rmiller@perkinscoie.com,
  rmiller-efile@perkinscoie.com

- **Michael Glick**
  michael.glick@kirkland.com

- **Lauren Michele Mitchell**
  lauren.mitchell@dgslaw.com,
  rebecca.gibson@dgslaw.com

- **John Caviness O'Quinn**
  john.oquinn@kirkland.com

- **Craig S. Primis**
  cprimis@kirkland.com,
  ghjones@kirkland.com

- **Shannon Wells Stevenson**
  shannon.stevenson@dgslaw.com,
  brigid.bungum@dgslaw.com

- **Gregory Skidmore**
  gskidmore@kirkland.com

s/ *Robert N. Miller*
Robert N. Miller
PERKINS COIE LLP
1900 16th Street, Suite 1400
Denver, CO  80202-5255
Tel:  303.291.2300
Fax:  303.291.2400
Email:  rmiller@perkinscoie.com

*Attorneys for Defendant*
  *Jeppesen Sanderson, Inc.*