**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 11-cv-01468-WJM-BNB

SOLIDFX, LLC,

      Plaintiff,

v.

JEPPESEN SANDERSON, INC.,

      Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART
MOTIONS TO EXCLUDE EXPERT TESTIMONY UNDER RULE 702**

---

      Plaintiff SolidFX, LLC ("Plaintiff") brings this breach of contract action against

Defendant Jeppesen Sanderson, Inc. ("Defendant").  (Sec. Am. Compl. ("SAC") (ECF

No. 158) pp. 20-37.)  The case is set for an eight-day trial beginning on April 7, 2014.

(ECF No. 220.)  Before the Court are four Motions to Exclude filed by Defendant

pursuant to Federal Rule of Evidence 702.  (ECF Nos. 221-24.)  For the reasons set

forth below, the Motions are GRANTED IN PART and DENIED IN PART.

## I.  LEGAL STANDARD

      A district court must act as a "gatekeeper" in admitting or excluding expert

testimony.  *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2004).  Admission

of expert testimony is governed by Rule 702, which provides:

> If scientific, technical, or other specialized knowledge will
> assist the trier of fact to understand the evidence or to
> determine a fact in issue, a witness qualified as an expert by
> knowledge, skill, experience, training, or education, may
> testify thereto in the form of an opinion or otherwise, if (1)

the testimony is based upon sufficient facts or data, (2) the
testimony is the product of reliable principles and methods,
and (3) the witness has applied the principles and methods
reliably to the facts of the case.

Fed. R. Evid. 702.  The proponent of the expert testimony bears the burden of proving

the foundational requirements of Rule 702 by a preponderance of the evidence.  *United

States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

## II.  ANALYSIS

Defendant moves to exclude portions of the expert testimony of five witnesses:

(1) Owen Phillips, (2) Jeffrey McDonald, (3) Willy Shih, (4) Dona Flamme, and (5)

Melinda Harper.  The Court will discuss each in turn below.

## A.    Dr. Owen Phillips

In addition to the contract claims still at issue in this case, Plaintiff originally

brought a number of antitrust claims.  (*See* ECF No. 158.)  During discovery, Plaintiff

disclosed Owen Phillips, Ph.D., an economist, as an expert witness.  Dr. Phillips's

expert reports and deposition testimony show that he was retained primarily to offer

opinions on relevant markets, Defendant's market share, and other issues central to an

antitrust claim.  (ECF No. 223-1 & 223-3.)  The Court has since granted summary

judgment in favor of Defendant on Plaintiff's antitrust claims.  (ECF No. 218.)

Defendant now moves to exclude Dr. Phillips's testimony, arguing that it will not

be helpful to the jury since the antitrust claims are no longer at issue in this case.  (ECF

No. 223.)  Whether testimony will be helpful is a question of common sense—*i.e.*, is an

average juror "qualified to determine intelligently and to the best possible degree the

particular issue without enlightenment from those having a specialized understanding of

the subject involved in the dispute."  Fed. R. Evid. 702 advisory committee's note.

The question here is one of relevance.  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993).  Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.  As with all evidence, whether particular testimony is relevant is relational—it depends on the proposed testimony and its relation to the fact to be proved or disproved.  *See Bitler*, 391 F.3d at 1121 (noting that courts must "look at the logical relationship between the evidence proffered and the material issue that evidence is supposed to support to determine if it advances the purpose of aiding the trier of fact").

Plaintiff contends that Dr. Phillips's testimony is relevant because his opinions on the markets for terminal charts and apps, competitive products in those markets, barriers to entering that market, and Defendant's market share will assist the jury on the determination of Plaintiff's damages due to the alleged breach of contract.  (ECF No. 226 at 5.)  The Court agrees that, although Dr. Phillips was primarily retained to support Plaintiff's antitrust claims, the fact that these claims are no longer at issue does not make his testimony irrelevant *per se*.  Thus, the Court finds that the entirety of Dr. Phillips's testimony should not be excluded as irrelevant.

However, the Court cautions Plaintiff that it will not permit Dr. Phillips to testify at length about issues that are not relevant to the remaining claims.  The Court acknowledges that some testimony on Defendant's market share could assist the jury in determining damages, but it will not allow the jury to be confused by testimony whose relevance fairly can be said remains limited to the now-dismissed antitrust claims (*e.g.*,

3

illegal tying, monopolization, etc.).  At some point, market evidence that is relevant to

Plaintiff's damages could cross the line such that it is unfairly prejudicial to Defendant

and/or misleading to the jury, which would implicate Rule 403.

Additionally, Plaintiff contends that Dr. Phillips's testimony could assist the jury in

determining Defendant's motivation for breaching the contract, and whether the breach

of contract was willful and wanton.  (ECF No. 226 at 9-10.)  The Court sees

questionable relevance to this testimony.  While Dr. Phillips could likely testify about the

economic impacts of a certain business decision and the jury may use this evidence to

infer a business's motivation for that decision, Dr. Phillips is certainly not qualified to

directly opine about Defendant's motivation for its actions.

In sum, the Court will not exclude any portion of Dr. Phillips's testimony at this time,

but the parties should consider the Court's observations herein when preparing for trial.

## B.    Dr. Jeffrey McDonald

Dr. Jeffrey McDonald is one of the principals of Plaintiff and, as such, will be one

of Plaintiff's primary fact witnesses in this case.  (*See* ECF No. 201 at 16.)  Dr.

McDonald holds a Ph.D. from Stanford University in Aeronautics/Astronautics and

Computer Science, as well as a Bachelor of Applied Science in Engineering Science.

(ECF No. 225-1.)  In addition to his education, Dr. McDonald has significant experience

in software engineering, is a licensed pilot, and has had a subscription to Defendant's

terminal charts since 2005.  (ECF No. 225 at 2-3.)  At trial, Plaintiff intends to call Dr.

McDonald as a fact witness based on his role in the company.  (ECF No. 201 at 16.)

Plaintiff disclosed Dr. McDonald as an expert witness "[b]ecause the dividing line

between lay and expert testimony is not entirely clear".  (ECF No. 225 at 4-5 n.3.)

4

Plaintiff contends that Defendant's Motion to Exclude should be denied because

Dr. McDonald will offer only lay witness testimony, which is governed by Rule 701

rather than 702.  (ECF No. 225 at 5.)  Federal Rule of Evidence 701 provides:

> If a witness is not testifying as an expert, testimony in the
> form of an opinion is limited to one that is: (a) rationally
> based on the witness's perception; (b) helpful to clearly
> understanding the witness's testimony or to determining a
> fact in issue; and (c) not based on scientific, technical, or
> other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.  There is no distinction "between expert and lay *witnesses*, but rather

between expert and lay *testimony*."  *Id*. (advisory committee's note).  Thus, the same

witness can provide both lay witness testimony and offer expert opinion testimony.

Rule 701 was amended in 2000 to "make[] clear that any part of a witness'

testimony that is based on scientific, technical, or other specialized knowledge . . . is

governed by the standards of Rule 702 and the corresponding disclosure requirements

of the Civil and Criminal Rules."  Fed. R. Evid. 701 (advisory committee's note).

Interpreting the 2000 amendment to Rule 701, the Tenth Circuit has held that testimony

provided by a witness is expert testimony if the testimony is "based on technical or

specialized knowledge," regardless of whether the witness is designated as an expert or

fact witness.  *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1214 (10th

Cir. 2011)).  "Rule 701 'does not permit a lay witness to express an opinion as to

matters which are beyond the realm of common experience and which require the

special skill and knowledge of an expert witness.'" *Id.* (quoting *Randolph v.

Collectramatic, Inc.*, 590 F.2d 844, 846 (10th Cir. 1979)).  "When the subject matter of

proffered testimony constitutes 'scientific, technical, or other specialized knowledge,'

the witness must be qualified as an expert under Rule 702." *Lifewise Master Funding v. Telebank*, 374 F.3d 917, 929 (10th Cir. 2004).  However, Rule 701 "allows lay witnesses to offer observations that are common enough and require a limited amount of expertise, if any." *Ryan Dev. Co., L.C. v. Ind. Lumbermans Mut. Ins. Co.*, 711 F.3d 1165, 1170 (10th Cir. 2013) (quotation omitted).

The line between 701 and 702 testimony is always difficult to discern, and is even more unclear in this case because there are such well-educated witnesses that will be testifying about a highly technical subject matter.  It is difficult to see how Dr. McDonald (or Ms. Flamme and Dr. Shih, who are discussed below) will be able to offer opinions without calling on his scientific and technical specialized knowledge.

The Court can see how some of Dr. McDonald's opinions may be lay opinion testimony, such as the fact that an electronic app displaying terminal charts is easier to use than cumbersome paper terminal charts.  While this opinion is likely informed by his experience as a pilot, the reasoning used to arrive at that opinion is not complex or outside the realm a layperson's deductive reasoning skills.  However, given the technical nature of some aspects of Dr. McDonald's expected testimony, the Court is not compelled by Plaintiff's argument that all of his testimony is lay witness testimony which is admissible under Rule 701.  For example, Dr. McDonald intends to testify about the relative merits of terminal chart apps.  (ECF No. 225 at 8.)  Because these opinions are clearly informed by both his specialized experience as a licensed pilot, and by his technical experience as a software engineer, they are governed by Rule 702. Thus, Dr. McDonald must be qualified as an expert before he can offer an opinion of this nature.

Defendant argues that Dr. McDonald's expert testimony should be excluded because he lacks the requisite experience and his opinions are not based on reliable principles and methods.[1]   (ECF No. 224 at 2.)  Having reviewed the evidence submitted by the parties, the Court preliminarily finds that Dr. McDonald is qualified to testify about software engineering and the use of terminal charts.  Though Dr. McDonald has likely not logged as many hours in the cockpit as a commercial pilot and has no specialized training in human behavior, these shortcomings go to the weight of his testimony rather than its admissibility.  *See Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 799 (4th Cir. 1989) (courts liberally construe a witness's qualifications in favor of expert status and consider gaps in a witness's qualification a matter for the jury to consider in determining what weight to give to the testimony).  The same is true with regard to Defendant's assertion that Dr. McDonald's opinions are "subjective and conclusory".  Defendant will have the chance to cross-examine Dr. McDonald to reveal his bias and challenge the veracity of his conclusions.

Finally, Defendant specifically moves to exclude Dr. McDonald's opinions related to the use of terminal charts while flying internationally.  (ECF No. 224 at 8.)  Defendant argues that these opinions were relevant only to the antitrust claim, because Plaintiff was attempting to show that Defendant had a monopoly on the international travel

---

[1]  Defendant also argues that much of Dr. McDonald's testimony was related to the antitrust claims and that this testimony is now irrelevant because those claims have been dismissed.  However, as set forth above, the Court finds that some evidence of the market for terminal charts, including electronic devices for viewing terminal charts, is relevant to Plaintiff's damages.  Thus, the Court views this issue as one best handled at trial.  Defendant is free to object to any portion of Dr. McDonald's testimony that it feels is outside the boundaries of the claims still remaining in this case, and the Court will rule on those objections as they arise at trial.

terminal charts market.  (*Id*. at 8-9.)  Defendant also contends that, to the extent these opinions are still relevant, Dr. McDonald is not qualified to offer expert testimony because he has only flown internationally once and has no experience switching between the charts of different countries.  (*Id*.)  Plaintiff does not respond to Defendant's argument regarding the relevance of this opinion.  (*See* ECF No. 225.) Instead, Plaintiff addresses its argument to whether this testimony falls within Rule 701 or 702.  (*Id*. at 6-7, 11-12.)

The Court agrees with Defendant that this testimony seems to have little, if any, relevance to the remaining claims.  Plaintiff's failure to address the specific relevance of this opinion is reason enough to grant Defendant's Motion in this regard. However, the Court also finds that Dr. McDonald's opinions about the use of terminal charts internationally is expert testimony governed by Rule 702.  The Court further finds that Plaintiff has failed to show that Dr. McDonald is qualified to offer this opinion.  Dr. McDonald has personally piloted a plane internationally only once, has no experience working with terminal charts outside of North America and the Caribbean, and has done little research into the charts available in other countries.  Thus, the Court will not permit Dr. McDonald to offer opinion testimony related to pilots' use of terminal charts internationally.[2]

## C.     Dr. Willy Shih

Dr. Willy Shih holds a B.S. from the Massachusetts Institute of Technology and a

---

[2]  The Court notes that fact testimony by Dr. McDonald—such as why he developed the proposed app in a certain way or what formed the basis for a certain business decision—would not be opinion testimony and would not fall within Rule 701 or 702.

Ph.D. from University of California at Berkeley, and is currently a Professor of

Management Practice at Harvard Business School.  (ECF No. 229-5.)  He is also a

personal friend of the principals of Plaintiff, Dr. McDonald and Ms. Flamme.  (ECF No.

229 at 2-3.)  Plaintiff intends to offer Dr. Shih as both a fact and an expert witness in a

number of areas.  (ECF No. 229-3.)

Defendant moves to exclude only one aspect of Dr. Shih's testimony, his opinion

about Plaintiff's potential for business growth.  (ECF No. 222.)  Defendant does not

challenge Dr. Shih's qualifications in general; rather, Defendant contends that Plaintiff

has failed to show that Dr. Shih had sufficient facts and data about Plaintiff to support

his opinion, and that this opinion is not based on a reliable methodology.  (*Id.* at 4-7.)

Plaintiff first argues that Dr. Shih's opinion about Plaintiff's potential for business

growth is not expert testimony that must satisfy Rule 702, but is lay opinion testimony

admissible under Rule 701.  Under the standard set forth *supra*, the Court finds that Dr.

Shih's opinion about Plaintiff's potential for business growth is expert testimony.

Whether an newly-formed technology company is likely to succeed goes beyond the

realm of common experience and requires more than minimal expertise.  Dr. Shih's

opinion plainly relies on his extensive education, as well as his specialized knowledge

and experience in the technology field.  Thus, the Court finds that Plaintiff must show

that Rule 702 is satisfied before the opinion can be admitted.

With regard to the requirements of Rule 702, Plaintiff argues that Defendant

"offers not one shred of evidence – including any expert testimony of its own – to

explain why Shih is not qualified to give his opinion or why it is not reliable."  (ECF No.

229 at 10.)  Even if this statement was an accurate recitation of the record, which it is

not, whether Defendant offered evidence in support of its Motion is irrelevant.  Plaintiff

bears the burden of establishing the admissibility of Dr. Shih's opinions, and it has

failed to meet that burden.  *Nacchio*, 555 F.3d at 1251.

Although the Court has no question about Dr. Shih's overall qualifications,

Plaintiff has failed to show that his opinion regarding its potential for business growth is

reliable.  One aspect of reliability that the proponent of expert testimony must show is

that the expert's opinion "is based on sufficient facts and data", and this inquiry is

qualitative, not quantitative.  *United States v. Lauder*, 409 F.3d 1254, 1264 n.5 (10th

Cir. 2005).  The Court finds that Dr. Shih lacks specific knowledge about Plaintiff's

business model, existing and future products, sales figures and sales projections, and

the market for Plaintiff's products.  (*See* ECF No. 222-1.)  In his deposition, Dr. Shih

admitted that he never reviewed Plaintiff's business plan, has no knowledge about how

many products Plaintiff sold or was proposing to sell, knew nothing about sales

projections, and has no knowledge of any competitor in the terminal chart market.  (*Id*.)

Plaintiff alleges that Dr. Shih's opinion is reliable because he evaluated the talent

of Plaintiff's principals, the market need for their product, and considered Plaintiff's

"early successes" to reach his opinion.  (ECF No. 229 at 10.)  Initially, the Court notes

that Plaintiff fails to cite any evidence in the record supporting this assertion.

Additionally, this is not sufficient to show reliability because Plaintiff fails to establish

that these factors are generally accepted in Dr. Shih's field as being indicative of a

business's future success.  *See Bitler*, 400 F.3d at 1235 (a methodology that is not

subject to peer review may be deemed reliable where it constitutes a generally

accepted practice in the discipline).  Thus, the Court finds that Plaintiff has failed to

show that Dr. Shih's opinion regarding Plaintiff's potential for business growth satisfies the requirements of Rule 702.  This opinion is therefore excluded.[3]

## D.    Dona Flamme

Dona Flamme is Plaintiff's CEO and will offer testimony at trial about Plaintiff's damages related to the breach of contract.  (ECF No. 230 at 2.)  Ms. Flamme has a Bachelor of Arts and Sciences in Electrical Engineering and Economics, as well as a Master of Business Administration, both from Stanford University.  (ECF No. 230-2.)  Ms. Flamme was previously a senior executive at Kodak, where she led a multi-million dollar division.  (ECF No. 230-1 ¶ 10.)

Defendant moves to exclude Ms. Flamme's testimony regarding Plaintiff's lost profits.  (ECF No. 221 at 8.)  It argues that Plaintiff has not met its burden under Rule 702 because Ms. Flamme is not qualified to offer this opinion, and because her opinions lack sufficient reliability.  (*Id*. at 8-10, 13-16.)  Defendant also argues that Ms. Flamme cannot offer testimony on lost profits under Rule 701 because her calculations involve complex assumptions that make this expert testimony.  (*Id*. at 10-13.)

The fact that Ms. Flamme has a degree in economics and significant experience running large business enterprises makes it difficult to see how her testimony would not based, at least in part, on her specialized experience.  As discussed *supra*, when opinion testimony draws on a witness's specialized experience, it is typically governed

---

[3]  The Court's ruling does not preclude Dr. Shih from offering fact testimony, such as that regarding his experience working with Dr. McDonald and Ms. Flamme, or character evidence (to the extent it is otherwise admissible).  It also does not preclude his expert testimony that Defendant does not challenge.  The Court holds only that Dr. Shih may not offer opinion testimony about Plaintiff's potential for business growth.

by Rule 702. However, in the 2000 amendments to Rule 702, which added subsection (c), the advisory committee noted that "most courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert" and that the amendment "does not purport to change that analysis." Fed. R. Evid. 702 (advisory committee's note). The advisory committee explained that this opinion testimony is not based on the business owner's experience, training or specialized knowledge, but on the "particularized knowledge that the witness has by virtue of his or her position in the business", and it would therefore still be permissible under Rule 701. *Id*.

The Tenth Circuit has applied Rule 701 to permit business owners to testify under that rule where their opinions are "based on straightforward, common sense calculations or where the business owners have "sufficient personal knowledge of their respective businesses *and* of the factors on which they relied to estimate lost profits." *Lifewise Master Funding*, 374 F.3d at 929 (emphasis in original). Business owners have not been allowed to testify as lay witnesses when their lost profits estimate was based on complex economic theories of which the business owners lack personal knowledge. *Id*.

Ms. Flamme's lost profits opinion appears to involve some relatively complex calculations, but she performed those calculations and understands the economic concepts underlying them. Ms. Flamme has significant experience conducting profit projections, generally and in the technology industry specifically. (ECF No. 230-1 ¶¶ 5-6.) She also has professional experience pricing products, estimating costs and

expenses, and fashioning budgets.  (*Id*. ¶¶ 7-17.)  Ms. Flamme has stated that, when

beginning the company, she personally did significant market research with regard to

Plaintiff's proposed product.  (*Id*. ¶ 18.)  Ms. Flamme combined her past experience

doing profit projections with her market research in her position as CEO of Plaintiff and

used it to arrive at her opinions regarding Plaintiff's lost profits.  There is no indication

that these projections rely on complex economic theories that Ms. Flamme does not

understand.  *Contra Lifewise Master Funding*, 374 F.3d at 929.  As such, the Court

finds that her testimony is admissible as lay opinion testimony under Rule 701.

However, even if the Court were to find that her opinions shaded into the expert

realm, the Court will still permit Plaintiff to offer the opinions.  Ms. Flamme's educational

background and experience leading major business entities—particularly with regard to

projecting profits—is sufficient to qualify her as an expert in this area.  The

shortcomings in her experience and resume that Defendant points out go to the weight

the jury should afford her testimony, and not its admissibility.  *See Hoffman v. Ford

Motor Co.*, 493 F. App'x 962, 982 (10th Cir. 2012) ("the alleged deficiencies defendants

identify go to the weight, not the admissibility of [the] expert opinions.  Any alleged

shortcomings in those opinions can be more than adequately addressed by

cross-examination and competing evidence.").

## E.    Melinda Harper

In addition to Ms. Flamme's testimony on lost profits, Plaintiff intends to offer

testimony from retained expert Melinda Harper on both lost profits and overall business

valuation.  (ECF No. 201 at 22.)  Defendant moves to exclude Ms. Harper's testimony

on lost profits and lost equity value.  (ECF No. 221.)  Defendant does not challenge Ms.

Harper's qualifications, instead arguing that she improperly relies on Ms. Flamme's

projected lost profits, and that Ms. Harper's calculations suffer the same flaws as

Defendant asserted with regard to Ms. Flamme's profit projections.  (*Id*. at 12-13.)

Defendant first argues that Ms. Harper improperly adopts the assumptions

underlying Ms. Flamme's lost profits opinions, and that her conclusions simply "parrot"

Ms. Flamme's conclusions.  (ECF No. 221 at 12.)  However, the record shows that Ms.

Harper reviewed Ms. Flamme's spreadsheets, conducted her own independent

research, and separately analyzed most issues.  (ECF No. 232-17.)  To the extent she

relied on Ms. Flamme's assumptions, such reliance is not improper, particularly given

the fact that the Court has held that Ms. Flamme's opinions are admissible.[4]  *See*

*Guidance Endodontics, LLC v. Dentsply Int'l*, 2009 WL 3672495, *11 (D.N.M. Sept. 29,

2009) ("[T]he business projections of a small business owner are the kind of data upon

which a consulting financial expert would rely when estimating the future profits for that

business.  A consulting financial expert often questions a business's assumptions and

projections, but the consultant does not often do an audit to verify each and every

assumption.").

Though Defendant points out many alleged gaps in Ms. Harper's calculations

---

[4]  Even if the Court had held that Ms. Flamme's lost profits opinions were inadmissible, Ms. Harper's reliance on these opinions would not render her separate opinions inadmissible per se.  As an expert witness, Ms. Harper is permitted to utilize inadmissible evidence if it is of a type reasonably relied on by experts in her field.  *See* Fed. R. Evid. 703.  "The rationale for this aspect of Rule 703 is that experts in the field can be presumed to know what evidence is sufficiently trustworthy and probative to merit reliance."  *Black v. M&W Gear Co.*, 269 F.3d 1220, 1229 (10th Cir. 2001).  A business owner's records and estimates of expected profits fall within Rule 703.  *Guidance Endodontics*, 2009 WL 3672495, at *11.  Thus, the fact that Ms. Harper relied on Ms. Flamme's calculations does not render her opinions inadmissible.

and attacks the assumptions underlying her opinions, the Court finds that these go to the weight the jury should afford her testimony, rather than its admissibility. *See Wilspec Tech., Inc. v. Dunan Holding Grp.*, 2008 WL 7254328, *1 (W.D. Okla. June 20, 2008) (assumptions made by expert in projecting lost profits goes to weight). Defendant is free to vigorously cross-examine Ms. Harper on the methods used to reach her figures for lost profits and lost equity value, including any assumptions that underlie her calculations, and the jury can assign to Ms. Harper's opinions whatever weight it deems appropriate. *See Supervalu, Inc. v. Assoc. Grocers, Inc.*, 2007 WL 624342, *3 (D. Minn. Jan. 3, 2007) (expert's assumption that plaintiff would win a contract renewal goes to weight, not admissibility, and did not make opinion on lost profits speculative).

## III.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.     Defendant's Motion to Exclude Testimony of Dona Flamme and Melinda Harper (ECF No. 221) is DENIED;

2.     Defendant's Motion to Exclude Testimony of Willy Shih (ECF No. 222) is GRANTED;

3.     Defendant's Motion to Exclude Testimony of Owen Phillips (ECF No. 223) is DENIED; and

4.     Defendant's Motion to Exclude Expert Testimony of Jeffrey McDonald (ECF No. 224) is GRANTED IN PART and DENIED IN PART as set forth herein.

Dated this 13th day of March, 2014.

BY THE COURT:

_____
William J. Martinez
United States District Judge