**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 11-cv-01468-WJM-BNB

SOLIDFX, LLC,

    Plaintiff,

v.

JEPPESEN SANDERSON, INC.,

    Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS *IN LIMINE***

---

This action is set for an eight-day jury trial commencing April 7, 2014. Before the Court are the parties' Motions *in Limine*. (ECF Nos. 242 & 243.) For the reasons set forth below, the Motions are granted in part and denied in part.

### I. PLAINTIFF'S MOTION *IN LIMINE*

Plaintiff moves to exclude the following evidence: (1) non-disclosed expert opinions from Rick Ellerbrock; (2) exhibits containing non-disclosed expert opinions; and (3) a portion of Dr. Jonathan Arnold's testimony. (ECF No. 242.) Each of these categories of evidence will be discussed in turn below.

**A.    Non-Disclosed Expert Opinions from Rick Ellerbrock**

Rick Ellerbrock is an employee of Defendant and was involved with securing authorization from the Federal Aviation Administration ("FAA") for Defendant's electronic software applications. During his deposition, Mr. Ellerbrock expressed his belief that, based on his experience in the field, it would have been difficult, if not

impossible, for Plaintiff to get its proposed iPad app authorized by the FAA.  (*See* ECF No. 242-2.)  Mr. Ellerbrock was not disclosed as an expert.  (ECF No. 242-1.)

Plaintiff moves to exclude any portion of Mr. Ellerbrock's testimony at trial which would constitute an expert opinion under Federal Rule of Evidence 702.  (ECF No. 242 at 5.)  Plaintiff contends that Mr. Ellerbrock's opinions regarding regulatory authorization procedures and requirements that would have applied to its products are not within the realm of an ordinary person's knowledge, and are therefore expert opinions.  (*Id.*)  In opposition to the Motion, Defendant contends that it intends to call Mr. Ellerbrock to testify at trial only as a fact witness, and does not intend to elicit opinion testimony.  (ECF No. 276 at 3.)  Defendant argues that any opinion offered by Mr. Ellerbrock during his deposition came about as a result of Plaintiff's counsel's questioning, but that Mr. Ellerbrock will not offer such opinions at trial.  (*Id.*)

The Court has previously given the parties guidance as to its view on the line between lay witness opinion testimony governed by Rule 701, and expert witness opinion testimony which is subject to Rule 702.  (*See* ECF No. 270.)  Given Mr. Ellerbrock's training and experience, it is likely that any opinion testimony he offered would fall within Rule 702.  Because he was not disclosed as an expert witness, the Court will not permit him to offer such opinion testimony at trial.  *See* Fed. R. Civ. P. 37© (barring testimony is appropriate sanction for non-disclosure).  However, the Court will not preclude Mr. Ellerbrock from offering testimony as a fact witness, even about matters of a specialized nature.

Accordingly, the Court excludes any opinion testimony offered by Mr. Ellerbrock that would fall within Rule 702, but otherwise allows his testimony.

**B.    Exhibits**

Plaintiff moves to exclude Defendant's exhibits A70, A77, A79-A83, A85, A87, and A90-A91, which are presentations discussing the process and procedures concerning the regulatory authorization of terminal chart applications. (ECF No. 242 at 6; ECF Nos. 242-3, 242-4, & 244-246.) Plaintiff contends that these exhibits are hearsay and that Defendant should not be permitted to insert expert opinions into presentation form and have them admitted as substantive evidence. (ECF No. 242 at 7.)

Defendant contends that these presentations are not hearsay because they fall within the business records exception. (ECF No. 276 at 4-5.) The Court disagrees. Even assuming Defendant could show that they were prepared in the ordinary course of business, the mere fact that a document was creased in the course of employment does not render it a business record. The presentations are not records of any act, transaction, occurrence or event, as required by Rule 803(6). They are also not the sort of document that bears sufficient indicia of reliability to qualify as a business record. Rather, the Court finds that these presentations are akin to training manuals and lesson plans, which are not covered by the business records exception. *See In re Nassau Cnty.*, 742 F. Supp. 2d 304, 319 (E.D.N.Y. 2010) (lesson plan prepared for training was not business record); *Gonzalez v. City of Garden Grove*, 2006 WL 5112757 (C.D. Cal. Dec. 4, 2006) (training manuals are not business records); 12A Fed. Proc. L. Ed. 33:445 ("Although the scope of Rule 803(6) is broad, it is not unlimited; for example, it does not embrace operating or procedural manuals, which are not records of any act, transaction, occurrence, or event as required by the Rule.").

Defendant also contends that these presentations are not hearsay because they are not being offered for the truth of the matter asserted. (ECF No. 276 at 5.) Defendant argues that the presentations are "a reflection of the efforts and resources that Jeppesen has undertaken with respect to the regulatory authorization process." (*Id.*) Assuming that this is the purpose for these exhibits, the Court finds that they should be excluded under Rule 403. If they are not being offered for the truth of the matter asserted, these exhibits have little relevance to the case. Defendant will already offer testimony from Mr. Ellerbrock about the steps taken by Defendant to get regulatory authorization for its products, and can question Mr. Ellerbrock or other witnesses about steps taken to educate customers. The Court fails to see how introducing the actual presentations into evidence materially adds to this testimony.

Rather, the Court finds that introduction of these exhibits has the potential to confuse the jurors about the issues in this case because these presentations contain a lot of information that is highly technical. The Court also agrees with Plaintiff's assertion that there are a lot of opinions in these presentations, and Plaintiff will not have the opportunity to question those opinions if the exhibits are admitted into evidence. Even if Defendant is not offering the exhibits for the truth of the matter asserted therein, there is a real possibility that the jurors could fail to draw this technical distinction, which would unfairly prejudice the Plaintiff because it will not have the opportunity to cross-examine the author of the opinions.

In sum, the Court finds that the presentations contained in exhibits A70, A77, A79-A83, A85, A87, and A90-A91 do not fall within the business records exception and, if not offered for the truth of the matter asserted, are barred by Rule 403. Accordingly,

the Court excludes admission of these exhibits.

**C.     Dr. Arnold's Testimony**

Dr. Arnold is Jeppesen's economic expert.  Plaintiff does not move to exclude his testimony generally, but argues for exclusion of any portion of Dr. Arnold's opinion which assumes that Plaintiff would not have been able to gain regulatory authorization for its proposed iPad app.  (ECF No. 242 at 7-8.)  Specifically, Plaintiff challenges Dr. Arnold's opinion that Plaintiff has failed to establish any damages because it has not shown that it would have been able to obtain regulatory authorization for its proposed product.  (*Id.*)  Plaintiff argues that, as an economist, Dr. Arnold is not qualified to offer an opinion on Plaintiff's ability to obtain regulatory authorization.

Defendant states that it does not intend to have Dr. Arnold testify about whether Plaintiff would have obtained the necessary regulatory approval for its apps.  (ECF No. 276 at 5.)  Defendant points out that Dr. Arnold's report states only that Plaintiff has not submitted evidence showing that it would have obtained regulatory approval.  (*Id.*)

The Court sees no reason to exclude any portion of Dr. Arnold's opinions.  As an economic expert, he is free to make certain assumptions, and then testify about the effect those assumptions would have on any economic issues.  *Utility Trailer Sales of Kan. City, Inc. v. MAC*, 267 F.R.D. 368, 372 (D. Kan. 2010) (assumptions by economic expert do not make opinions inadmissible).  The assumptions underlying an expert opinion go to the weight that should be afforded such opinion, and not its admissibility. *See United States v. Cavely*, 318 F.3d 987, 997-98 (10th Cir. 2003).

The Court will not permit Dr. Arnold to offer opinion testimony about whether in fact Plaintiff would have been able to obtain regulatory approval for its proposed products. However, Dr. Arnold will be permitted to offer his opinions about the economic impact of any such issues, even if those opinions are based on assumptions, and Plaintiff is free to vigorously cross examine on those opinions.

## II. DEFENDANT'S MOTION *IN LIMINE*

Defendant moves to exclude seven categories of evidence, which will be discussed in turn below.

### A.   Evidence of Defendant's Monopoly

Defendant moves to exclude all evidence related to its alleged monopoly in the terminal charts market. (ECF No. 243 at 2.) Defendant argues that any evidence regarding a monopoly was relevant only to the anti-trust claims, which are no longer part of this case after the Court's summary judgment ruling. (*Id.*) Finally, Defendant argues that, to the extent there may be some minimal relevance, it should be excluded under Rule 403. (*Id.*)

Defendant also moves to exclude evidence related to its market share. (ECF No. 243 at 3.) While acknowledging that market share is relevant to Plaintiff's damages, Defendant argues that Plaintiff should not be permitted to go into any alleged wrongful accrual of market share, maintenance thereof, or abuse of the market share because summary judgment was granted on the anti-trust claims. (*Id.*)

Plaintiff states that it does not intend to refer to Defendant as a monopolist at trial. (ECF No. 273 at 2.) However, Plaintiff argues that Defendant's request is

overbroad because there are documents that refer to Jeppesen's monopoly power and there is no motion to exclude these. (*Id.*) Plaintiff contends that there is evidence that Defendant terminated Plaintiff's contract to avoid direct competition, and that this is relevant because it makes it more likely that Defendant's termination of the contract was a breach of the agreement. (*Id.*)

The Court finds that Defendant has failed to show good cause to exclude all references to its monopoly on the terminal charts market. Plaintiff has shown that Defendant's market share is relevant to its damages, and the Court does not view this issue as so unfairly prejudicial or likely to confuse the jury that Rule 403 is implicated. The Court will hold Plaintiff to its representation that it will not refer to Defendant as a monopolizer, and both parties should minimize reference to anti-trust concepts in general. The parties should be mindful that the Court will not be instructing the jury on anti-trust matters and, therefore, overuse of anti-trust terms—such as monopoly and relevant market—are likely to confuse the jury about the real issues in this case, which is primarily a contract dispute at this point.

Thus, the Court will not preclude the use of any particular terms or phrase at trial, but cautions the parties to keep focused on the remaining claims rather than attempt to involve any claims that are no longer part of this case.

**B.     Jeppesen's Revenue and Overall Worth**

Defendant moves to exclude any evidence of Jeppesen's overall revenues or net worth on the basis of relevance. (ECF No. 243 at 4.) Plaintiff argues that the amount Jeppesen's customers spend on terminal charts is "a critical benchmark to assess the reasonableness of Plaintiff's lost profits and app pricing" projections. (ECF No. 273 at 3.)

The Court finds that certain aspects of the monetary value of the Defendant's terminal charts are relevant to this case, particularly Plaintiff's damages calculations. Therefore, the Court will not preclude Plaintiff from introducing evidence about how much Defendant's customers pay for its terminal charting services. However, because this is essentially a contract case, Defendant's overall net worth is, at most, minimally relevant. Plaintiff does not need to offer evidence of Defendant's overall revenues and net worth in order to show how much Jeppesen's customers spend on terminal charts.

Accordingly, the Court will permit Plaintiff to introduce evidence of the value of the terminal chart market, including what customers pay for Defendant's terminal charts services, but will not allow Plaintiff to go into Defendant's overall revenues or net worth.

**C.     Primary Intelligence Surveys**

As a matter of course, Jeppesen retains a third-party vendor called Primary Intelligence to conduct surveys and interviews with its customers. (*See, e.g.*, ECF No. 243-3.) It now seeks to exclude the survey results because they contain hearsay within hearsay. (ECF No. 243 at 5.)

Plaintiff first argues that the surveys are non-hearsay because they are party admissions. (ECF No. 273 at 3.) While some portion of the surveys may be sufficiently linked to Defendant to constitute a party admission, the comments made by the customers contained therein cannot be traced to Jeppesen. Thus, even if the first layer of out-of-court statements are non-hearsay, the surveys still contain another layer of hearsay.

Plaintiff next argues that the surveys are records of regularly conducted business and fall under Rule 803(6). (ECF No. 273 at 4.) However, as with Defendant's

presentations discussed above, these surveys are not records of any act, transaction, occurrence or event, as required by Rule 803(6). As such, they are not subject to the business records exception.

Plaintiff also contends that the surveys are non-hearsay because they contain present sense impressions of the customers' state of mind. (ECF No. 273 at 4.) But the surveys are not just recitations of what the customers thought; they contain statements about the customers' bases for these thoughts. *United States v. Joe*, 8 F.3d 1488, 1493 (10th Cir. 1993) (Rule 803(3) does not apply to any statement expressing why the declarant had a particular state of mind). Thus, the Court finds that the surveys are not admissible under the present sense impression exception.

Plaintiff also argues that the surveys are admissible under Rule 703 to the extent they were relied on by experts. (ECF No. 273 at 4.) While Rule 703 may permit an expert that has relied on the surveys to testify about those results—to the extent such testimony is relevant to the case as the anti-trust claims have been dismissed—Rule 703 does not require that the surveys themselves to be admitted as substantive evidence. *See* Fed. R. Evid. 703 advisory committee note ("Rule 703 has been amended to emphasize that when an expert reasonably relies on inadmissible information to form an opinion or inference, the underlying information is not admissible simply because the opinion or inference is admitted.") Rather, the Court must weigh the probative value of the evidence against the possibility that the jury will unfairly and prejudicially misuse the otherwise inadmissible evidence. *Id.* Having reviewed the surveys, the Court finds that the risk that the jury would improperly use the customers statements contained in the surveys outweighs any minimal relevance of the surveys.

As such, the Court does not find that the surveys are admissible under Rule 703.

Finally, Plaintiff argues that the surveys are non-hearsay because they are being offered to show customers' interest in an alternative product rather than for the truth of the matter asserted. The Court acknowledges that it would be possible for Plaintiff to use portions of the surveys to show the desire in the market for a competitor to the Defendant's app. Thus, the surveys have some relevance even if offered not for the truth of the matter asserted. On the other hand, the disparaging comments in the surveys could easily unfairly prejudice the Defendant and confuse the jury as to the real issues in this case. Plaintiff has a multitude of other evidence at its disposal to show this market demand, which minimizes the need to rely on the surveys. Moreover, the surveys are voluminous and admission of all of these surveys just to show that there was a market for a competing app could waste a significant amount of the jury's time. Thus, to the extent the surveys are not offered for the truth of the matter asserted, the Court finds that the surveys are inadmissible under Rule 403.

Accordingly, the Court excludes admission of the Primary Intelligence surveys.

**D.      Anonymous Internet Reviews of Defendant's iPad App**

Defendant moves to exclude internet reviews of its iPad App, which appear in the iTunes store, as hearsay. (ECF No. 243 at 6.) Defendant also argues that, to the extent they were relied on by an expert, Plaintiff cannot show that these comments are the type of material ordinarily relied upon by an expert and, therefore, Rule 703 does not apply. (*Id.*) Finally, Defendant contends that Rule 403 bars the comments. (*Id.*)

Plaintiff contends that the anonymous statements may be offered for something other than the truth of the matter asserted, such as to show a market for a competing

app.  (ECF No. 372 at 4.)  Plaintiff also contends that they may be admissible under Rule 703.  (*Id.*)

To the extent they are not offered for the truth of the matter asserted—such as to show a consumer desire for alternative products—the iTunes reviews have only minimal relevance.  As previously noted, Plaintiff has other evidence that can be used to show this consumer demand, which makes these comments cumulative to some extent.  Significantly, because the iTunes reviews are essentially anonymous online comments, they are inherently unreliable.  *Doe v. Kamehameha Sch.*, 2008 WL 5423191, *4 (D. Haw. Dec. 31, 2008) (noting that, under the veil of anonymity, internet users will "make outrageous, offensive, and even nonsensical statements" because "the public may never know their true identities").  Defendant has no way of testing who made the comments, the bases for these comments, or even verifying that the comments were not made by Plaintiff or its representatives.

Moreover, even to the extent these anonymous online comments were relied on by an expert, they are not admissible under Rule 703.  The Court finds it difficult to believe that a qualified expert could credibly testify that anonymous online comments are the type of evidence that is typically relied upon by an expert in their field.  Moreover, the Court finds that the possibility that the jury may misuse the otherwise inadmissible evidence outweighs any need to admit the evidence to support the expert opinions.

Courts have typically allowed anonymous online comments only in cases in which a party's notice of a particular problem is a key issue in the case.  *See*, *e.g.*, *Guild v. Gen. Motors Corp.*, 53 F. Supp. 2d 363, 368 (W.D.N.Y. 1999) (holding

evidence of customer complaints was inadmissible to show a defect, but was admissible to show notice assuming a proper foundation is established and assuming the defendant contested the issue of notice). This case is readily distinguishable in that whether or not there is a market for a competitive app is not a key merits issue and, even if it were, Plaintiff has other evidence it can use to establish this point.

In sum, the Court finds that the cumulative nature of the evidence, coupled with the danger of unfair prejudice to Defendant, waste of the jury's time, and possible confusion of the issues heavily outweighs any relevance of the iTunes customer reviews of Defendant's app. Accordingly, the Court will not permit Plaintiff to use these customer reviews at trial.

**E.     Hearsay Testimony About Plaintiff's Products**

Defendant moves to exclude evidence of customer comments made to Plaintiff's principals about their intent to buy Plaintiff's products on the grounds that these comments are inadmissible hearsay. (ECF No. 243 at 7-8.) Plaintiff argues that these statements will be offered to show the customer's "motive, intent, or plan", and therefore fall under the hearsay exception set forth in Rule 803(3).

The Court finds that Rule 803(3) does not permit testimony of what other customers may have told Ms. Flamme or other representatives for Plaintiff. These individuals may testify about actions they took based on comments that were made to them, or why they formed certain beliefs, but they may not reiterate the substance of comments that were made to them. The statements themselves are inadmissible hearsay, and will not be permitted at trial.

**F.      George John's Deposition Testimony**

Defendant moves to exclude Plaintiff's admission of deposition testimony from George John, one of Defendant's retained experts. Defendant has not yet decided whether it will call Mr. John and argues that, if it does not, the deposition is hearsay. (ECF No. 243 at 8-9.) Plaintiff contends that Mr. John's deposition testimony is admissible under Rule 32(a). (ECF No. 273 at 5.)

Rule 32(a) provides that a deposition of an unavailable witness may be used at trial against a party who was present or represented at the taking of the deposition and had reasonable notice of the deposition. Defendant argues that Rule 32(a) applies only to fact witnesses, but cites no Tenth Circuit authority for this proposition. (ECF No. 243 at 9.)

The Tenth Circuit does not appear to have drawn a distinction between fact and expert witnesses under Rule 32(a). In *Alfonso v. Lund*, 783 F.2d 958 (10th Cir. 1986), the Tenth Circuit held that admission of a doctor's deposition testimony was not error when the doctor was unavailable because he was out of the country. Thus, whether to admit expert deposition testimony under Rule 32(a) appears to be within the discretion of the district court. *See Polys v. Trans-Colorado Airlines, Inc.*, 941 F.2d 1404, 1410 (10th Cir. 1991) (recognizing that admission of an expert deposition was possible under Rule 32(a)(3), but concluding that the district court's refusal to admit the deposition testimony based on unfair surprise to the opposing party was not plain error).

Some courts have admitted expert deposition testimony when the party that retained the expert decides not to call the expert, and the expert is not within the court's

13

subpoena power. *See Nichols II v. Am. Risk Mgmt., Inc.*, 2000 WL 97282, *2 (S.D.N.Y. Jan. 28, 2000). Other courts have refused to admit expert deposition testimony under Rule 32(a) because the court believed it was too important for the jury to consider the witness's credibility. *In re Air Crash Disaster at Stapleton Airport*, 720 F. Supp. 1493, 1501-03 (D. Colo. 1989).

In this case, Dr. John's testimony does not appear to be so pivotal that the Court deems it necessary for the jury to be able to judge his credibility in person. Defendant's only argument for barring the admission of his deposition testimony is that Rule 32(a) applies only to fact witnesses, which is not an accurate statement of the law in this circuit. Thus, the Court finds that Defendant has failed to come forward with any good reason to bar the admission of Dr. John's deposition. Accordingly, should Defendant decide not to call Dr. John as a live witness at trial,[1] the Court will permit Plaintiff to introduce his deposition testimony as substantive evidence.

### III. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Plaintiff's Motion *in Limine* (ECF No. 242) is GRANTED IN PART and DENIED IN PART as set forth herein;

2. Defendant's Motion *in Limine* (ECF No. 243) is GRANTED IN PART and DENIED IN PART as set forth herein;

---

[1] Should Defendant decide to produce Dr. John as a live witness, Plaintiff will be precluded from using the deposition testimony except for impeachment purposes. *See* WJM Revised Practice Standard V.G.2.a.

3. The parties are hereby ON NOTICE that the Court's rulings on the instant Motions are not self-executing and the parties will be expected to raise a timely objection if the opposing party violates any portion of this Order.

Dated this 2nd day of April, 2014.

BY THE COURT:

William J. Martinez
United States District Judge