**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 11-cv-01468-WJM-BNB

SOLIDFX, LLC,

      Plaintiff,

v.

JEPPESEN SANDERSON, INC.,

      Defendant.

---

## ORDER GRANTING IN PART DEFENDANTS' RENEWED RULE 50(a) MOTION

---

      Plaintiff SOLIDFX, LLC ("Plaintiff") brings this action against Defendant

Jeppesen Sanderson, Inc. ("Defendant" or "Jeppesen") alleging breach of contract and

various state law tort claims.  The Court held an eight-day jury trial, which resulted in

the jury finding in Plaintiff's favor on all claims.  (ECF No. 343.)

      On April 15, 2014, following the close of Plaintiff's case-in-chief, the parties

made oral motions for judgment as a matter of law pursuant to Federal Rule of Civil

Procedure 50(a).  (ECF No. 340.)  The Court heard argument on the motions and took

them under advisement, pending Defendant's presentation of its case.  (*Id*.)  On April

16, 2014, following the close of all evidence at trial, the parties orally renewed their

motions, and Defendant filed a written supplement elaborating on its argument.  (ECF

No. 341.)  The Court then orally ruled on the parties' mid-trial motions, and informed

Defendant that, to the extent the Court's ruling did not touch on all issues addressed in

the written renewed motion, such issues were preserved for consideration post-verdict.

(ECF No. 342.)  On April 17, 2014, the jury returned a verdict on the claims at issue in this case, awarding Plaintiff the following damages:  $42,308,000 on its claim for breach of contract—development of iPad apps, $615,000 on its claim for breach of contract—JIT for tailored terminal charts, $173,000 on its negligent misrepresentation claim, and $1 on each of the other claims.  (ECF No. 343-6.)

After the verdict, the Court ordered the parties to brief any issues raised in Defendant's renewed Motion for Judgment as a matter of law ("Motion") (ECF No. 341) that were not resolved by the trial or by the Court's rulings during trial.  Plaintiff's responsive brief was filed on May 13, 2014 (ECF No. 360), and Defendant's reply brief was filed on June 5, 2014 (ECF No. 366).

## I.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 50, a court should rule against a party as a matter of law if the "party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient basis to find for the party on that issue."  *See* Fed. R. Civ. P. 50(a)(1); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Herrara v. Lufkin Indus., Inc.*, 474 F.3d 675, 685 (10th Cir. 2007).  The standard under Rule 50 is similar to the standard for a motion for summary judgment under Rule 56.  *See Anderson*, 477 U.S. at 250.  As the Tenth Circuit Court of Appeals has stated:

> The question is not whether there is literally no evidence supporting the nonmoving party but whether there is evidence upon which a jury could properly find for that party. For a jury to properly find for a party, the party must present more than a scintilla of evidence supporting its claim.

*Herrara*, 474 F.3d at 685 (quoting *Century 21 Real Estate Corp. v. Merj Int'l Inv. Corp.*, 315 F.3d 1271, 1278 (10th Cir. 2003)).  A court should review all of the record evidence in a light most favorable to the non-moving party.  *See Riske v. King Soopers*, 366 F.3d 1085, 1087-88 (10th Cir. 2004).

## II.  ANALYSIS

Based on the parties' post-trial filings, there appears to be agreement that the following issues remain pending: (1) whether Plaintiff can recover damages on the breach of contract claim beyond the 5-year term of the contract; and (2) whether the economic loss rule bars the jury's award of damages on the tort claims.  (ECF Nos. 360 & 363.)  The Court will address these issues in turn below, as well as pre-judgment interest and other remaining motions.

**A.    Damages After December 31, 2014**

It is undisputed that the contract at issue in this case began on December 31, 2009, was for an initial five-year term, and automatically renewed, unless either party provided written notice at least 180 days before the end of the term.  (ECF No. 360-1 at 7.)  The initial term is set to expire on December 31, 2014.  (*Id.*)

At trial, Plaintiff presented evidence on its damages resulting from the breach of contract through its economic expert, Melinda Harper.  Ms. Harper testified that Plaintiff's damages resulting from the breach of contract were approximately 42 million dollars.  This figure included "lost profits" for the initial term of the contract (2010-2014) in the amount of about $21 million, and another $21 million for "lost business value",

which she defined as the value of Plaintiff's business at the end of 2014.[1]  (Tr. Trans. at

1301, 1330-32.)  Ms. Harper's business valuation models, which resulted in her opinion

regarding the "lost business value", assumed that the parties' contractual relationship

would be renewed for five years beyond 2014.  (*Id*. at 1295.)

The jury awarded Plaintiff $42,308,000 on its breach of contract claim related to

the denial of the ability to develop iPad apps.  (ECF No. 343-6 at 1.)  Defendant moves

for judgment as a matter of law on this verdict, particularly the portion of the verdict that

compensated Plaintiff for "lost business value".  (ECF No. 363 at 2-8.)  Defendant

contends that, because it had the right to terminate the contract as of December 31,

2014, any damages award beyond this date is speculative as a matter of law.  (*Id*. at 3.)

Defendant also argues that, even if not barred as a matter of law, the evidence in this

case was not sufficient to permit a reasonable juror to award damages for lost business

value.  (*Id*. at 8.)

Having reviewed the case law, the Court finds that Colorado law does not bar the

recovery of any future lost profits or lost business value, even where a party can

terminate a contract at will.  In *Acoustic Marketing Research v. Technics, LLC*, 198 P.3d

96 (Colo. 2008), the Colorado Supreme Court affirmed a jury's verdict awarding future

royalty payments as damages on a breach of contract claim.  The contract at issue was

an agreement to collaborate on the design of a product, and required Acoustic to pay

---

[1]  During trial, the Court granted Defendant's Rule 50(a) motion to the extent it sought judgment as a matter of law on Plaintiff's recovery of lost profits and lost business value tied to Apps 3 & 4 (FX Maintain & FX Mobile) based on § 8.2's exclusion of consequential damages. (ECF No. 342.)  Thus, the Court has ignored the portions of Ms. Harper's testimony that relates to these apps.

royalties to Technics for the first 3,000 products sold. *Id*. at 97. However, given the uncertainty of the market for the device, Acoustic was permitted to stop making and selling the product at any time, so long as it paid Technics $15,000. *Id*. at 97. At trial, Acoustic's CEO testified that it was selling approximately 200 units per year, that the business was profitable, and that it had no intention of discontinuing the business. *Id*. at 99. The jury also heard from an expert who testified that the product was competitively priced, and that the market for these devices had grown and was likely to remain viable for five to ten years. *Id*. The jury found that Acoustic had breached the contract, and ordered Acoustic to pay royalties to Technics on all 3,000 devices provided for in the contract. *Id*. at 97.

On appeal, Technics argued that the award of future lost royalties was speculative as a matter of law because the contract granted it the right to stop making the devices at any time. *Id*. at 98. The Colorado Supreme Court disagreed, finding no reason to distinguish future lost royalties from any other future lost profits. *Id*. at 99. The court held that determination of future lost royalties was a question of fact, which required the jury to decide whether Acoustic was "reasonably certain to continue" making the device, and to compute a "fair approximation of any future damages which would accrue as a result." *Id*. The court viewed Acoustic's right to stop production at any time as "but one piece of evidence the jury was able to consider in evaluating whether the company would, indeed, stop." *Id*.

From this case, it is apparent that Colorado law permits recovery of future lost profits, even where a contract includes a termination provision that would permit the

breaching party to end the agreement.  The cases cited by Defendant that hold

otherwise pre-date *Acoustic Marketing* and/or are from the Colorado Court of Appeals

or a less authoritative court.  (*See* ECF No. 363 (citing *Denver Publ'g Co. v. Kirk*, 729

P.2d 1004 (Colo App. 1986); *Friedman & Son, Inc. v. Safeway Stores, Inc.*, 712 P.2d

1128 (Colo. App. 1985).)  The Court finds that the cases cited by Defendant are not

persuasive in light of the Colorado Supreme Court's holding in *Acoustic Marketing*.

Therefore, as a matter of law, Plaintiff is permitted to recover damages for future

lost profits even though the contract could be terminated.  However, the Court must still

determine whether Plaintiff presented sufficient evidence at trial such that the award of

future lost business value was not speculative.  "[L]ost profits are recoverable only if

they can be proven with reasonable certainty."  *Denny Constr., Inc. v. City & Cnty. of

Denver*, 199 P.3d 742, 746 (Colo. 2009).  The Colorado Supreme Court has repeatedly

held that "a plaintiff seeking future damages must provide the trier of fact with '(1) proof

of the fact that damages will accrue in the future, and (2) sufficient admissible evidence

which would enable the trier of fact to compute a fair approximation of the loss.'"  *Id*.

(quoting *Pomeranz v. McDonald's Corp.* 843 P.2d 1378, 1382 (Colo. 1993)).

At trial, economist Melinda Harper testified that her damages calculation of lost

business value—which was adopted in whole by the jury—was based on the

assumption that the contract between the Parties in this case would be renewed for at

least five years beyond the initial term.  (Tr. Trans. at 1296.)  Ms. Harper believed that

renewal of the contract was "likely" because: (1) the automatic renewal provision meant

that it was "easier" to have the contract renew than to terminate it; and (2) if the contract

6

had not been breached, Defendant would not have made its own app and, after five years of Plaintiff's app being on the market displaying Defendant's terminal charts, the parties "would have really been wedded to each other at that point in time and learned how to work together and learned the benefits.  So it seems likely that it would renew." (*Id*.)

Ms. Harper's assumption that Defendant would not have made its own app if it had allowed Plaintiff to market a terminal charts app was based on Ms. Harper's review of the deposition of George John, an expert that was retained by Defendant during discovery but whose deposition was not introduced as evidence at trial.  (Tr. Trans. at 1296.)  Mr. John had previously opined that Defendant was either going to make an app (design an app in-house) or buy an app (license its charts to a third-party like Plaintiff who would develop the app), but that it would not do both.  (*Id*.; *see also* Deposition of George John (ECF No. 305-25) pp. 272-73.)  However, Mr. John's testimony was not offered by either party at trial.

While it was not improper for Ms. Harper to have considered that prior testimony as a basis for the assumptions underlying her damages calculations, the fact that Plaintiff did not present Mr. John's opinion as substantive evidence is significant because it is undisputed that the contract between the parties was non-exclusive. Thus, even if it had allowed Plaintiff to develop iPad apps displaying its terminal charts, Jeppesen could have created, marketed, and sold its own iPad app at any point in time during the initial 5 year period of the contract.  Because Mr. John's testimony was not admitted into evidence, there was no evidence upon which a juror could rely to find that Jeppesen would not have created its own app, regardless of the status of its contract

7

with Plaintiff.

Ms. Harper testified that her lost business value calculations were premised on the fact that Plaintiff retained the right to display Jeppesen's terminal charts on its app for at least five years after the initial term of the contract expired.  (Tr. Trans. at 1319.) Ms. Harper acknowledged that, if the contract was not renewed beyond its initial term, Plaintiff's business value at the end of 2014 would be zero.  (*Id*. at 1320-21.)

At trial, Jeppesen's corporate representative, Michael Abbott, testified that Jeppesen did not intend to renew the contract with Plaintiff, and that notice would be provided in accordance with the contract terms.  (Tr. Trans. at 1513-14.)  On April 30, 2014, Jeppesen provided Plaintiff with notice of its intent to allow the contract to expire as of December 31, 2014.  (ECF No. 363-1.)

On this record, the Court finds that Plaintiff failed to present sufficient evidence to permit a reasonable juror to find that Jeppesen's refusal to allow Plaintiff to develop iPad apps displaying terminal charts would cause Plaintiff any damages beyond the expiration of the initial term of the contract.  This case is distinguishable from *Acoustic Marketing* for a number of reasons.  First, in stark contrast to the testimony of Acoustic's CEO—that his company intended to continue to manufacture the device that generated the requirement to pay royalties—Jeppesen's corporate representative unambiguously testified to Defendant's intent to stop doing business with Plaintiff at the end of the contract term.  No evidence to the contrary is anywhere to be found in the record.  This plain evidence of the parties' intent thus makes this case easily distinguishable from *Acoustic Marketing*.

Additionally, under the terms of the contract in *Acoustic Marketing*, Acoustic was

8

required to pay Technics for each device the company sold, up to 3,000 devices, so long as Acoustic continued making the devices.  In this case, there was no exclusivity provision.  At any point during the initial contract term or the years thereafter, Jeppesen could have developed and sold its own terminal charts app, or worked with a different third-party developer or developers to create an app that competed with Plaintiff's app, and Plaintiff would not have been entitled to any profits from these efforts.  This significant distinction makes the future lost profits allegedly suffered by Plaintiff in this case more speculative than that which the jury awarded in *Acoustic Marketing*.

Finally, one of the factors relied on by the Colorado Supreme Court to find that the future lost royalties were not speculative was the fact that the contract was of limited duration, *i.e.*, until Acoustic sold 3,000 units, so the jury was "not asked to predict the viability of [the market] into the indefinite future."  *See Acoustic Marketing*, 198 P.3d at 100.  In this case, the future lost business value is not limited to any particular number of items, or tied to any future sales or market event.  Rather, it is premised solely on the contract between the parties being renewed into the foreseeable future.  Given Jeppesen's uncontroverted evidence of its intent not to renew the contract, the Court finds that the jury's future lost business valuation is pure speculation.

The Court acknowledges that Plaintiff was only required to prove the amount of future damages to a reasonable degree of certainty.  However, it was required to show that *the fact* of future damages was certain.  *Acoustic Marketing*, 198 P.3d at 96.  On the evidence presented at trial, the Court finds that no reasonable juror could conclude that Plaintiff was certain to suffer damages beyond the initial term of the contract, *i.e.*, December 31, 2014.  Because the evidence on future lost business value was lacking,

9

the Court grants Defendant's renewed Rule 50 motion to the extent it seeks judgment as a matter of law on any damages beyond December 31, 2014.  *See Herrara*, 474 F.3d at 685 (party must present more than a scintilla of evidence to survive a Rule 50 motion).

Given this ruling, the Court finds that the jury's damages award for the breach of contract relating to the development of iPad apps must be reduced to $20,922,500.00, the amount of lost profits Plaintiff showed that it suffered as a result of Defendant's breach of contract during the initial term of the contract (2010-2014).  (ECF No. 360 at 11.)

**B.      Application of the Economic Loss Rule**

In addition to the damages awarded by the jury on Plaintiff's breach of contract claims, the jury awarded Plaintiff $173,000 on its claim for fraudulent concealment. (ECF No. 343-6 at 3.)  Defendants move for judgment as a matter of law on this measure of damages, arguing that it is barred by the economic loss rule.  (ECF No. 363 at 7-10.)

Under the economic loss rule, "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law."  *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000).  In adopting the rule, the Colorado Supreme Court recognized three policy considerations:

> (1) to maintain a distinction between contract and tort law;
> (2) to enforce expectancy interests of the parties so that they
> can reliably allocate risks and costs during their bargaining;
> and (3) to encourage the parties to build the cost

considerations into the contract because they will not be
able to recover economic damages in tort.

*BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 72 (Colo. 2004).

For a tort claim to survive application of the economic loss rule, the duty must

arise independently of any contractual obligation.  *Town of Alma*, 10 P.3d at 1263.

Plaintiff contends that its negligent misrepresentation claim is not subject to the

economic loss rule because Jeppesen had an independent duty to be honest with

Plaintiff regarding its intent to develop an iPad app.  (ECF No. 360 at 10.)  Plaintiff

argues that Jeppesen's representations regarding the fact that it was "still working on its

iPad strategy" in February, March, April, and May of 2010 created an independent legal

duty that required Jeppesen to disclose the fact that it was, in fact, planning to create its

own iPad app.  (*Id*.)

If the jury's verdict had been different, the Court may have agreed with Plaintiff

that there was an independent legal duty to disclose that information.  For example, if

the jury had found that the contract did not cover an iPad app, it would necessarily

follow that Jeppesen would have had no contractual obligation to work with Plaintiff on

the development of such app.  In that case, a separate legal duty could have arisen

between the parties based on the statements made to Plaintiff and its representatives.

However, the jury found that the contract between the Parties covered the iPad

app and that Jeppesen was required to permit Plaintiff to develop an iPad app that

displayed its terminal charts.  Given this finding, Jeppesen was contractually obligated

to work with Plaintiff on the iPad app.  (*See* ECF No. 360-1 (requiring the Parties to

"work together" and "cooperate to host Jeppesen Data on SOLIDFX Systems.").)

Moreover, this contractual obligation included a duty of good faith and fair dealing. *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995) ("Colorado . . . recognizes that every contract contains an implied duty of good faith and fair dealing.").

Because Jeppesen already had a contractual obligation to work with Plaintiff to develop an iPad app displaying Jeppesen's terminal charts, Plaintiff has failed to show that Jeppesen had a separate and *independent* legal duty which supports its claim for fraudulent misrepresentation. *See Hamon Contractors, Inc. v. Carter & Burgess, Inc.*, 229 P.3d 282, 293-94 (Colo. App. 2009) (concluding that the defendants' tort duties to refrain from deliberate concealment or misrepresentation did not differ in any way from their express and implied contractual duties, which included the implied covenant of good faith and fair dealing). As the same legal duty formed the basis for both Plaintiff's breach of contract and fraudulent misrepresentation claims, Plaintiff cannot recover additional monetary damages on the fraud claim. *See Town of Alma*, 10 P.3d at 1263. Accordingly, the Court vacates the portion of the jury's verdict awarding Plaintiff $173,000 on its fraudulent misrepresentation claim.

## C.    Other Pending Motions

Earlier in this case, the Court granted Defendant's Motion for Summary Judgment to the extent it sought summary judgment on Plaintiff's claims under the Sherman Act. (ECF No. 218.) The Court based its ruling on two holdings: (1) Plaintiff had failed to show a "tying arrangement" between Jeppesen's iPad app and its terminal charts subscription; and (2) Jeppesen had presented evidence that it did not charge customers for its iPad app. (*Id*. at 9-11.) The Court noted that, the fact that Jeppesen

did not charge for its app was "not dispositive", and also noted that the lack of a tying arrangement was "more significant[]".  (*Id*. at 9-10.)

Shortly before trial, Jeppesen supplemented its discovery disclosures with documents which Plaintiff contends show that Jeppesen does, in fact, charge commercial airlines significant sums for its iPad app.  (*See* ECF No. 267.)  Upon receipt of this newly disclosed evidence, Plaintiff filed a Motion for Limited Reconsideration of Order Partially Granting Defendant Jeppesen Sanderson Inc.'s Motion for Summary Judgment.  (ECF No. 261.)  The Motion for Limited Reconsideration asks the Court to reconsider, based on this new evidence, its ruling granting summary judgment in favor of Jeppesen on the Sherman Act claims.[2]  (*Id*.)  In its reply brief, Plaintiff candidly acknowledges that the Court had a second basis for granting summary judgment on its Sherman Act claims and states that it "must request this reconsideration in order to preserve this new evidence for the record on appeal."  (ECF No. 290 at 1-2.)

The Court sees no reason to reconsider its Order granting summary judgment on the Sherman Act claims.  Even if the Court were to assume that Jeppesen does, in fact, charge its commercial customers for its iPad app, the newly discovered evidence does not affect the analysis with regard to the lack of a tying arrangement.  As such, Plaintiff's Motion for Limited Reconsideration is denied.

Finally, Plaintiff has filed a Renewed Motion for Judgment as a Matter of Law intended to preserve its argument that § 8.2 of the contract does not bar damages for

---

[2]  Plaintiff later moved to supplement its Motion for Limited Reconsideration to append additional newly disclosed documents so that the record would contain all relevant materials. (ECF No. 317.)  The Motion to Supplement is granted, and all relevant documents have been considered.

lost profits and business value related to the non-terminal chart displaying apps—App 3 (FX Maintain) and App 4 (FX Mobile).  (ECF No. 361.)  The arguments raised in the Motion are the same ones Plaintiff made in support of its mid-trial oral motion for judgment as a matter of law.  The Court previously set forth the basis for its ruling, and sees no reason to reconsider or elaborate on this reasoning at this point in the proceedings.  (Tr. Trans. at 1857-73.)  Accordingly, Plaintiff's Renewed Motion for Judgment as a Matter of Law is denied.

## D.    Entry of Judgment

As all Motions related to the trial have been resolved, the Court directs the Clerk to enter judgment on the jury's verdict, as amended by the rulings set forth herein.

The jury awarded Plaintiff the following damages: (1) $42,308,000 on the claim for breach of contract—development of iPad apps; (2) $615,000 on the claim for breach of contract—JIT for tailored terminal charts; (3) $1 on claim for breach of contract—duty of good faith and fair dealing; (4) $173,000 on the fraudulent misrepresentation claim; (5) $1 for fraudulent concealment; and (6) $1 for intentional interference with business relations.

Given the Court's rulings in this Order, the amount awarded for breach of contract—development of iPad apps—is reduced from $42,308,000 to $20,922,500, and the award of $173,000 for fraudulent misrepresentation is vacated in its entirety. Accordingly, the total amount of the  judgment to be entered on the jury's  verdict is $21,537,503, plus pre-judgment and post-judgment interest on this amount.

Based on the post-trial filings, the parties appear to agree on the entitlement to, the rate, and amount of pre-judgment interest.  Specifically, the parties agree that

Plaintiff was entitled to pre-judgment interest of $1,610,482 for the contract claims as of April 17, 2014, plus $5,073 per day until the entry of judgment.  (ECF Nos. 360 & 363.) The parties also agree that post-judgment interest is governed by 28 U.S.C. § 1961. (*Id.*)  Thus, the Court directs the Clerk to enter judgment in favor of Plaintiff in the amount of $21,537,503 based on the jury's verdict, $1,965,592 in pre-judgment interest ($1,610,482 + ($5,073 x 70 days)), and post-judgment interest at the rate set forth in 28 U.S.C. § 1961.

### III.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Plaintiff's Motion to Supplement (ECF No. 317) is GRANTED;

2. Plaintiff's Motion for Limited Reconsideration (ECF No. 265) is DENIED;

3. Plaintiff's Renewed Motion for Judgment as a Matter of Law (ECF No. 361) is DENIED;

4. Defendant's renewed Rule 50(a) Motion for Judgment as a Matter of Law (ECF No. 341) is GRANTED IN PART and DENIED IN PART;

5. The portion of the jury's verdict awarding damages for future lost business value on the claim for breach of contract—development of iPad apps is VACATED;

6. The portion of the jury's verdict awarding monetary damages for fraudulent misrepresentation is VACATED;

7. The Clerk shall enter judgment in favor of Plaintiff in the amount of $21,537,503 based on the jury's verdict, $1,965,592 in pre-judgment interest ($1,610,482 + ($5,073 x 70 days)), and post-judgment interest at the rate set forth in 28 U.S.C. § 1961.

Dated this 26th day of June, 2014.

BY THE COURT:

_____
William J. Martinez
United States District Judge