**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 11-cv-01468-WJM-BNB

SOLIDFX, LLC,

    Plaintiff,

v.

JEPPESEN SANDERSON, INC.,

    Defendant.

---

**ORDER DENYING IN PART DEFENDANT'S RULE 50(b) MOTION AND DENYING
DEFENDANT'S MOTION FOR NEW TRIAL OR REMITTITUR**

---

Plaintiff SOLIDFX, LLC ("Plaintiff" or "SOLIDFX") brings this action against Defendant Jeppesen Sanderson, Inc. ("Defendant" or "Jeppesen") alleging breach of contract and various state law tort claims. The Court held an eight-day jury trial, which resulted in the jury finding in Plaintiff's favor on all claims. (ECF No. 343.) The jury awarded Plaintiff the following damages: $42,308,000 on its claim for breach of contract (development of iPad apps); $615,000 on its claim for breach of contract (JIT for tailored terminal charts); $173,000 on its negligent misrepresentation claim; and $1 on each of the other claims. (ECF No. 343-6.) After resolving some post-trial motions, the Court entered judgment in favor of Plaintiff. (ECF No. 407.)

Before the Court are Defendant's Rule 50(b) Motion for Judgment as a Matter of Law (ECF No. 377) and Motion for New Trial or Remittitur (ECF No. 378) (together "Motions"). For the reasons set forth below, the Motions are denied in part and granted in part.

## I. LEGAL STANDARD

In evaluating a motion brought under Federal Rule of Civil Procedure 50(b), the Court must examine all the evidence admitted at trial, construe that evidence and the inferences from it in the light most favorable to the non-moving party, and refrain from making credibility determinations and weighing the evidence. See *Tyler v. RE/MAX Mountain States*, 232 F.3d 808, 812 (10th Cir. 2000). Judgment as a matter of law is appropriate "only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position." *Finley v. United States*, 82 F.3d 966, 968 (10th Cir. 1996).

Defendant brings its Motion for a New Trial under Rule 59(a)(1), which permits the Court to order a new trial on all or some of the issues "for any of the reasons for which a new trial has heretofore been granted in an action at law in federal court." Such a motion can be granted based on any error so long as "the district court concludes the 'claimed error substantially and adversely' affected the party's rights." *Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1217 (10th Cir. 2008) (quoting *Sanjuan v. IBP, Inc.*, 160 F.3d 1291, 1297 (10th Cir. 1998)).

## II. ANALYSIS

Though Defendant moves under both Rule 50(b) and Rule 59(a)(1)(A), many of the arguments raised in the Motions overlap. As such, the Court will discuss the Motions together by the issues raised therein.

**A.    Section 8.2 of the Contract**

Following the close of evidence, the Court granted Defendant's Rule 50(a)

Motion to the extent it sought to preclude recovery of certain categories of lost profits sought by Plaintiff. (ECF No. 356 at 232-41.) Defendant challenges this ruling in both of the instant Motions.

In its Rule 50(b) Motion, Defendant argues that, under Colorado law, lost profits are always classified as consequential damages, and therefore § 8.2 of the contract barred Plaintiff from recovering any lost profits. (ECF No. 377 at 14.) Defendant also contends that § 8.2 bars recovery of lost profits as a matter of law, regardless of whether lost profits are classified as consequential or direct damages. (ECF No. 377 at 13.)

In its Motion for New Trial, Defendant contends that the Court improperly ruled as a matter of law on the meaning of § 8.2 of the contract. (ECF No. 378 at 7-8.) Defendant points out that, in ruling on Defendant's Motion for Summary Judgment, the Court held that § 8.2 was ambiguous, but that the Court reconsidered this issue during trial and construed the meaning of § 8.2 as a matter of law. (*Id.*; *see also* ECF No. 218 at 34-35.) Defendant argues that the Court's ruling at trial was error, and that the jury should have been permitted to determine the meaning of § 8.2 of the contract. (ECF No. 378 at 7.) Defendant also contends that it was "significantly prejudiced" by the Court's ruling in that it "devoted substantial time and effort at trial to a defense based on Section 8.2 that was premised on the Court's prior finding of ambiguity." (*Id.* at 9.)

First, the Court notes that Defendant re-raised the issue of whether § 8.2 barred Plaintiff's claim for lost profits in its mid-trial Rule 50(a) motion. (*See* ECF No. 336 at 5-12.) Defendant took the position that "the plain language of § 8.2 could not be clearer", and that the Court has an obligation to enforce "an unambiguous contract according to

3

its plain language." (*Id.* at 6-7.)  Defendant then renewed this motion at the close of all evidence, and repeated its position that the Court should interpret § 8.2 as a matter of law.  (ECF No. 356 at 225.)  Having asked the Court to interpret § 8.2 as a matter of law, Defendant cannot now argue that the Court "significantly prejudiced" Defendant by doing so.

Second, a denial of summary judgment is not a final judgment, and a district court is always free to reconsider such rulings. *See Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1224 n.2 (10th Cir. 2008); *Anderson v. Deere & Co.*, 852 F.2d 1244, 1246 (10th Cir. 1988) ("It is within the District Judge's discretion to revise his interlocutory orders prior to entry of final judgment.")  At summary judgment, the Court was far less informed on issues that were key to the Court's ruling at trial.  Defendant devoted two pages in its sixty page summary judgment brief to this issue, and Plaintiff offered a three page response.  (ECF No. 128 at 53-54; ECF No. 164 at 58-60.)  Neither party's summary judgment briefs discussed the nature of Plaintiff's plans under the contract, specifically its intent to make two apps displaying Defendant's terminal charts, and then two apps that built on the goodwill of these original products.  (ECF No. 128 at 53-54; ECF No. 164 at 58-60.)  These were key facts that gave the Court the required context needed to interpret § 8.2 of the contract as a matter of law.

As to the substantive arguments raised by Defendant, the Court issued and explained its ruling following the close of evidence at trial.  (ECF No. 356 at 232-41.)  The Court held that § 8.2 of the contract was enforceable and unambiguous, and that it barred lost profits that were consequential damages but did not bar lost profits that were direct damages.  (*Id.* at 235.)  The Court noted that whether damages are direct or

4

consequential is a matter of law, see *Int'l Tech. Instruments, Inc. v. Eng. Measurements Co.*, 678 P.2d 558, 561 (Colo. App. 1983), and that lost profits can be either direct or consequential depending on the facts of the case, see *Penncro Assoc. v. Sprint Spectrum L.P.*, 499 F.3d 1151 (10th Cir. 2007). Based on the facts of this case, the Court found that the lost profits from FXView and apps 1 (FXView HD) and 2 (FXView Enterprise) were direct damages and therefore recoverable by Plaintiff, but that lost profits for apps 3 (FX Maintain) and 4 (FX Mobile) were consequential damages and barred by § 8.2. (ECF No. 356 at 237-38.)

The Court has reviewed the arguments raised by Defendant in the instant Motion and sees no reason to reconsider this ruling. Defendant does not make any new argument or point to any evidence that the Court previously failed to consider. As such, the Court finds that Defendant has failed to show that it is entitled to judgment as a matter of law on Plaintiff's claim for lost profits, and its Rule 50(b) Motion is denied in this regard. Defendant has also failed to show that it is entitled to a new trial due to the Court's ruling regarding the effect of § 8.2 of the contract on Plaintiff's entitlement to recover lost profits.

**B.     Recovery of Lost Profits**

In its Rule 50(b) Motion, Defendant contends that Plaintiff should not have been permitted to recover any damages for lost profits because the evidence offered was too speculative. (ECF No. 377 at 7-12.) Relying on *Western Cities Broadcasting v. Schueller*, 849 P.2d 44 (Colo. 1993), Defendant argues that Colorado law bars recovery of lost profits when there is no evidence of past profits. (ECF No. 377 at 7-8.) Defendant contends that, because Plaintiff had no past profits associated with iPad

5

sales, *Western Cities* bars Plaintiff from recovering any lost profits damages. (*Id.*) However, in *Western Cities*, the Colorado Supreme Court explicitly stated that it was not establishing "a *per se* rule requiring a showing of past profitability in order to award lost profits." 849 P.2d at 50. Rather, it made clear that long-standing Colorado law on lost profits remained the appropriate standard. *Id.*

At trial, the Court instructed the jury on this standard, and the jury returned a verdict in Plaintiff's favor. (ECF Nos. 343-3, 343-6.) Drawing all reasonable inferences in favor of Plaintiff, as the Court must on a Rule 50(b) Motion, the Court concludes that Plaintiff introduced sufficient evidence to have allowed a reasonable juror to award lost profits damages. Thus, the Court concludes that Defendant has failed to show that Plaintiff's lost profit projections—which the jury adopted in its verdict—were speculative as a matter of law.

**C.     Dona Flamme's Testimony**

In its Motion for New Trial, Defendant argues that the Court should have excluded Dona Flamme's testimony on the profits that she had projected Plaintiff would make if the contract had not been breached. (ECF No. 378 at 5.) Defendant contends that Ms. Flamme should not have been permitted to offer lay witness testimony on lost profits under Federal Rule of Evidence 701, and that she was not qualified to offer an expert opinion on lost profits under Rule 702. (*Id.* at 5-16.)

Prior to trial, Defendant raised the same arguments in its Motion to Exclude Testimony of Dona Flamme and Melinda Harper Regarding Lost App Profits and Lost Business Value. (ECF No. 221.) Noting that the Tenth Circuit has routinely permitted business owners to testify about the projected profits of their own business, the Court

ruled that Ms. Flamme's testimony was admissible under Rule 701. (ECF No. 270 at 12-13.) Alternatively, the Court held that, to the extent her testimony went beyond that permitted under Rule 701, she was qualified to offer expert testimony under Rule 702. (*Id.* at 13.) The Court noted that Ms. Flamme's impressive educational background, as well as her experience leading major business entities, with specific experience projecting profits. (*Id.*)

Having reviewed the arguments raised by Defendant in the instant Motion, the Court sees no reason to reconsider this ruling, and it is specifically incorporated herein. (*See* ECF no. 270 at 11-14.) While the Court's pretrial ruling was based on Ms. Flamme's anticipated testimony, Ms. Flamme and other witnesses testified about her professional experience budgeting, controlling costs, and projecting profits in complex technical industries. Defendant's criticisms of Ms. Flamme's qualifications—such as the fact that Ms. Flamme had no experience marketing or selling iPad apps—go to the weight the jury could have assigned her testimony, not to its admissibility under Rules 701 or 702. Defendant vigorously cross-examined Ms. Flamme about the bases for her profit projections at trial, and it was up to the jury to assess her credibility. The Court confirms its ruling that Ms. Flamme's testimony was admissible under either Rule 701 or 702, and sees no reason to grant Defendant a new trial on this basis.

**D.    Intentional Interference Claim**

At trial, the jury found in favor of Plaintiff on its claim that Defendant intentionally interfered with business relations, and awarded Plaintiff $1 on this claim. (ECF No. 343-6.) Defendant moves for judgment as a matter of law on this claim, arguing that its contact with Plaintiff's potential customers was privileged because those customers

were already existing customers of Defendant.  (ECF No. 377 at 16-17.)

Over Plaintiff's objection, the Court instructed the jury on the business competition privilege, which is an exception to an intentional interference with business relations claim.  (ECF No. 343-3 at 42.)  Specifically, the Court instructed the jury that "Defendant's actions were not improper if it was addressing its existing business relationship with that commercial airline.  Competitors in an industry are allowed to compete with each other, and to induce third persons to do business with it instead of its competitor."  (*Id.*)  The Court must presume that the jury followed this instruction.

The Court finds that Plaintiff presented sufficient evidence to permit a reasonable juror to find in its favor on the intentional interference with business relations claim.  Plaintiff showed that Defendant took steps to prevent multiple airlines from purchasing Plaintiff's products.  (*See* ECF No. 352 at 262-84; 391-7.)  While Defendant had an existing business relationship with these airlines, a reasonable juror could have concluded that Plaintiff and Defendant were not "competitors in an industry" because they were supposed to be working together.  If they are not competitors, the business competition privilege does not apply.

Accordingly, the Court finds that Defendant is not entitled to judgment as a matter of law on Plaintiff's intentional interference with business relations claim.

### E.     Fraudulent Misrepresentation and Concealment

In ruling on Defendant's Renewed Rule 50(a) Motion, the Court held that Plaintiff had failed to show that Defendant had an independent legal duty to Plaintiff, and therefore its tort claims were barred by the economic loss doctrine.  (ECF No. 369 at 12.)  This holding resulted in the Court vacating the jury's award of $173,000 on

Plaintiff's fraudulent misrepresentation claim. (*Id.*) While the Court's order mentioned the fraudulent concealment claim, the Court did not specifically vacate the jury's verdict on that claim. (*Id.*)

Defendant now seeks clarification that the Court's ruling applies to both Plaintiff's claim for fraudulent misrepresentation and the claim for fraudulent concealment. (ECF No. 377 at 18-19.) It does. Plaintiff failed to show that Defendant owed it a legal duty that was independent of any contractual duty and, therefore, the economic loss rule bars both fraud claims. Omission of the fraudulent concealment claim was simply an oversight, which the Court will now correct.

Accordingly, the Court finds that Plaintiff is not entitled to collect damages on its fraudulent concealment claim, and the jury's award of $1 on that claim is vacated.

**F.     Remittitur**

Defendant seeks remittitur of the jury's award of damages on the grounds that it is excessive and against the weight of the evidence. (ECF No. 378 at 17.) Because "[t]rial by jury is a bedrock right of our legal system", a district court "abuses its discretion in ordering a remittitur 'when the size of the verdict turns upon conflicting evidence and the credibility of witnesses.'" *Prager v. Campbell Cnty. Mem. Hosp.*, 731 F.3d 1046, 1061 (10th Cir. 2013) (quoting *Palmer v. City of Monticello*, 31 F.3d 1499, 1508 (10th Cir. 1994)). A jury's verdict is "inviolate" and remains so as "long as it is not so excessive as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial." *Id.*; *see also M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 766 (10th Cir. 2009).

Defendant asks the Court to remit the lost profits damages awarded to Plaintiff in

this case because Plaintiff's projected profits far exceed what Defendant has obtained marketing and selling its own iPad app. (ECF No. 17-18.) Defendant argues that Plaintiff's "bloated projections simply are not credible and only further confirm that SolidFX's damages calculations are unreasonable and against the weight of the evidence." (*Id.* at 19.)

The Court acknowledges that Plaintiff's profit projections exceeded what Defendant has experienced over the past five years. However, this is not a basis for remittitur. Plaintiff introduced evidence showing that its app would have been first to market, and that its customers were pleased with other electronic products that it had offered. Perhaps Plaintiff's iPad app would have been superior to Defendant's app such that Plaintiff would have been able to charge higher fees and still have a higher subscription rate. Although these are all hypothetical possibilities, Defendant caused this uncertainty by breaching the contract and refusing to allow Plaintiff to develop iPad apps. Having forced Plaintiff to rely on projected profits rather than realize actual profits, Defendant cannot complain about the inaccuracy of Plaintiff's projections.

This is not a case in which the jury awarded damages that were significantly higher than what the Plaintiff requested or where the jury appeared to pull an outrageously high number out of thin air. *See Lewis v. Bd. of Sedgwick Cnty.*, 140 F. Supp. 2d 1125, 1140 (D. Kan. 2001) (jury's damages award that was twice what plaintiff requested caused the court to conclude that the jury had considered an impermissible factor and that remittitur was appropriate); *Blangsted v. Snowmass-Wildcat Fire Protection Dist.*, 642 F. Supp. 2d 1250, 1257-58 (D. Colo. 2009) (given the limited and non-quantifiable evidence of emotional injury presented at trial, court remitted $500,000

award for emotional damages to $250,000). Rather, the jury's verdict in this case was precisely in line with Ms. Flamme's and Ms. Harper's profits projections. Defendant had the opportunity to cross-examine these witnesses about such projections, and also presented its own expert witness who testified that Plaintiff would not experience any lost profits. The jury heard this evidence, weighed the credibility of these witnesses, and chose to award damages consistent with Ms. Flamme's and Ms. Harper's profit projections. This is precisely how our system is designed to function.

The jury holds "the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact." *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1227 (10th Cir. 2000) (quotation omitted). "It is a fundamental legal principle that the determination of the quantum of damages in civil cases is a fact-finder's function." *Bennett v. Longacre*, 774 F.2d 1024, 1028 (10th Cir. 1985). As the verdict in this case was well supported by the testimony of Plaintiff's witnesses, the Court cannot say that it was so excessive that remittitur is appropriate. Accordingly, Defendant's request for a new trial or remittitur based on the amount of the jury's damages award is denied.

### III.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant's Rule 50(b) Motion for Judgment as a Matter of Law (ECF No. 377) is GRANTED in so far as it seeks clarification that the Court's earlier order applied to both the fraudulent misrepresentation and fraudulent concealment claims, but DENIED in all other respects; and

2. Defendant's Motion for a New Trial or Remittitur (ECF No. 378) is DENIED.

Dated this 5th day of February, 2015.

BY THE COURT:

_____
William J. Martínez
United States District Judge