IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 11-cv-1468-WJM-BNB

SOLIDFX, LLC,

    Plaintiff,

v.

JEPPESEN SANDERSON, INC.,

    Defendant.

## ORDER DENYING MOTION TO RECONSIDER

Now before the Court is Plaintiff Solid FX, LLC's ("SOLIDFX") Motion to Reconsider (ECF No. 442) (the "Motion"), which asks this Court to reinstate the damages award of more than $42 million previously vacated by the Tenth Circuit Court of Appeals, on the grounds that the contract provision which the Tenth Circuit interpreted as a complete bar to those damages should nevertheless be held unenforceable. As explained below, the Tenth Circuit's mandate plainly forecloses SOLIDFX's argument, and so the Motion to Reconsider is denied.

### I. BACKGROUND

More detailed background of this case has been set out in prior orders, and in the Tenth Circuit's opinion, *SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*, 841 F.3d 827, 836–38 (10th Cir. 2016) ("*SOLIDFX*"), *cert. denied*, 138 S. Ct. 75, 199 L. Ed. 2d 183 (2017), and is not repeated here. Familiarity with the more detailed background of this case is presumed.

In brief summary, SOLIDFX is a software development company which entered into a license agreement with Defendant Jeppesen Sanderson, Inc. ("Jeppesen"), giving SOLIDFX access to certain of Jeppesen's proprietary products in exchange for SOLIDFX's agreement to create software platforms to display Jeppesen's terminal charts, which are used by pilots worldwide, on electronic tablets or e-books. When Jeppesen instead developed its own applications to display its terminal charts on Apple iPads, SOLIDFX sued Jeppesen on antitrust claims and for breach of contract and related claims.

After the Court granted summary judgment against SOLIDFX's antitrust claims, the case proceeded to trial. Ruling from the bench on the parties' cross-motions for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a)(1), the Court addressed both parties' arguments regarding the application and consequence of § 8.2 of the license agreement. Jeppesen argued, *inter alia*, that this provision barred SOLIDFX from recovering any lost profit damages. SOLIDFX argued, *inter alia*, that § 8.2 did not bar all lost profit damages, and that § 8.2 should be held unenforceable as a matter of public policy, at least to the extent that it barred recovery to an unconscionable degree and/or because Jeppesen's conduct had been willful or wanton. (*See generally* Trial Tr. at 1407–31, 1855–73 (ECF Nos. 355, 356).)

In its Rule 50(a)(1) rulings, this Court interpreted § 8.2 of the license agreement as a matter of law, concluding it prohibited recovery of lost profit damages only to the extent such amounts constituted consequential damages, but did not preclude SOLIDFX from recovering lost profits that amounted to direct damages. (Trial Tr. at 1865–070.)

In addition—and most relevant here—the Court rejected SOLIDFX's argument that § 8.2 is unenforceable. In particular, the Court rejected SOLIDFX's argument that under *Core-Mark Midcontinent, Inc. v. Sonitrol Corporation*, 300 P.3d 963 (Colo. App. 2012) ("*Core-Mark*"), and a related line of authority, § 8.2 should be held unenforceable "if the jury find[s] that the defendant willfully and wantonly breached the contract." (Trial Tr. at 1864.) The Court reasoned that the facts here are readily distinguishable from the concerns implicated in *Core-Mark* (*id.*), and that, "[*Core-Mark*] and many other Colorado cases, have recognized that damages limitations provisions are generally enforceable," (*id*. at 1865). The Court further concluded that "Section 8.2 . . . does not limit damages to an unconscionable degree," since it "does not cover any direct damages flowing from the breach of contract." (*Id.* at 1864–65.) Given those observations, the Court ruled that SOLIDFX had "failed to put forth any reason why [the Court] should refuse to give the parties what they bargained for and enforce Section 8.2." (*Id*. at 1865.) It is this holding that § 8.2 is enforceable which SOLIDFX's present Motion asks the Court to reconsider.

After the Court entered its Rule 50(a) rulings, the matter was submitted to the jury, which found for SOLIDFX on all claims, awarding over $42 million in damages on SOLIDFX's breach of contract claims, an additional $173,000 for Jeppesen's fraudulent misrepresentation (an amount later vacated based on the economic loss doctrine (ECF No. 369))[1], and $1 for each of SOLIDFX's other claims. (ECF No. 343-6.)

---

[1] The Court later clarified that its application of the economic loss rule barred recovery on both the fraudulent misrepresentation claim and also the fraudulent concealment claim, on which the jury had awarded $1 in nominal damages. (ECF No. 408.)

3

Following extensive post-trial motions practice, in which the parties raised, renewed, and exhaustively briefed their respective arguments related to § 8.2, the Court entered final judgment in SOLIDFX's favor, awarding a total of $42,923,000 on the breach of contract claims, reflecting three kinds of damages. (*See* ECF Nos. 370, 407; *SOLIDFX*, 841 F.3d at 832.)[2]

On appeal, the Tenth Circuit reversed this Court's interpretation of § 8.2 of the license agreement, holding that it "unambiguously precludes either party from recovering lost profits," and that "[w]e must enforce the unambiguous exclusion of lost profits contained in Subsection 8.2.1." *SOLIDFX*, 841 F.3d at 838. Accordingly, the Tenth Circuit vacated the damages award "to the extent it includes lost profits of any stripe," while concluding that all components of the damages for breach of contract amounted to lost profits, thus, "vacat[ing] the portions of the jury's verdict that awarded $20,922,500 in lost profits from SOLIDFX's projected iPad app sales during the initial term of the contract; $21,385,500 for lost business value based on anticipated lost profits after the initial contract term; and $615,000 for lost profits for tailored terminal charts for the iRex device." *Id.* at 838, 843.[3]

Thus, the result on appeal vitiated SOLIDFX's damages recovery as a practical matter, while leaving undisturbed the jury's findings of liability, as well as its nominal

---

[2] The extensive post-trial motions briefing raised and addressed Renewed Motions for Judgment as a Matter of Law (*see* ECF Nos. 360, 361, 363, 366, 377, 394, 401, 409, 412, 413), a Motion for New Trial or Remittitur (ECF Nos. 380, 395, 402), and also a Motion to Amend Judgment (376, 389, 406).

[3] The Tenth Circuit also held that all of the categories of contract damages awarded by the jury constituted consequential lost profit damages, *SOLIDFX*, 841 F.3d at 838–41, and also affirmed this Court's grant of summary judgment against SOLIDFX's antitrust claims. *Id.* at 841–43.

damages awards of $1 for each of SOLIDFX's claims of breach of the duty good of good faith and fair dealing and for intentional interference with business relations.

## II. LEGAL STANDARDS

### A.   Rules 59(e) & 60(b)

SOLIDFX's Motion is styled as a Motion for Reconsideration but invokes and seeks review under Federal Rule of Civil Procedure 60(b)(5) & (6).  (ECF No. 441 at 6–7.)

Under Rule 60(b)(5), the Court, "[o]n motion and just terms," may relieve a party from a final judgment or other order, if "the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively would no longer be equitable."

Rule 60(b)(6) permits the Court to similarly relieve a party from judgment or a prior order for "any other reason that justifies relief."

Generally speaking, the grant of relief under Rule 60(b) lies within the Court's discretion, but is "extraordinary and may only be granted in exceptional circumstances." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1009 (10th Cir. 2000) (internal quotation marks omitted).  Similarly, to the extent SOLIDFX's Motion qualifies as a motion for reconsideration under Rule 59(e), the limited grounds that may support such a motion include "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice.  Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law.  It is not appropriate to revisit issues

5

already addressed or advance arguments that could have been raised in prior briefing." *Id.* at 1012.

**B.    Mandate Rule**

In addition, because the parties dispute whether the relief sought by SOLIDFX is foreclosed by the Tenth Circuit's previous opinion on appeal, resolution requires analysis under the "mandate rule."

"The mandate rule is a discretion-guiding rule that generally requires trial court conformity with the articulated appellate remand." *United States v. Hicks*, 146 F.3d 1198, 1200 (10th Cir. 1998). Sometimes described as a corollary to the law of the case doctrine, "the 'mandate rule,' provides that a district court must comply strictly with the mandate rendered by the reviewing court." *Zinna v. Congrove*, 755 F.3d 1177, 1182 (10th Cir. 2014) (internal quotation marks omitted). "A lower court is 'bound to carry the mandate of the upper court into execution and cannot consider the questions which the mandate laid at rest.'" *Estate of Cummings by & through Montoya v. Cmty. Health Sys., Inc.*, ___ F. 3d, ___, 2018 WL 577695, at *5 (10th Cir. Jan. 29, 2018) (quoting *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939)).

For these purposes, "[t]he mandate consists of [the Court of Appeals'] instructions to the district court at the conclusion of the opinion, and the entire opinion that preceded those instructions." *Proctor & Gamble Co. v. Haugen*, 317 F.3d 1121, 1126 (10th Cir. 2003). The mandate "controls all matters within its scope," but leaves the district court "free to pass upon any issue which was not expressly or impliedly disposed of on appeal." *Id.* (internal quotation marks omitted). Therefore, "when the

6

remand is general . . . the district court is free to decide anything not foreclosed by the mandate.'" *Id.* at 1125 (10th Cir. 2003).

Where the parties dispute the scope of the mandate, and whether it did or did not decide a particular issue, the district court must exercise discretion to determine the scope of any proceedings on remand and what issues remain undecided, unless the mandate has "specifically cabined" the district court's discretion:

> The scope of the mandate on remand in the Tenth Circuit is carved out by exclusion: unless the district court's discretion is specifically cabined, it may exercise discretion on what may be heard. Therefore we do not make inquiry into whether the issue presented is antecedent to or arises out of the correction on appeal. Instead the district court is to look to the mandate for any limitations on the scope of the remand and, in the absence of such limitations, exercise discretion in determining the appropriate scope. This approach has been characterized as a presumption in favor of a general remand. Notably, the mandate rule is a rule of policy and practice, not a jurisdictional limitation, which thus allows some flexibility in exceptional circumstances.

*Dish Network Corp. v. Arrowood Indem. Co.*, 772 F.3d 856, 864 (10th Cir. 2014).

### III. ANALYSIS

SOLIDFX argues that although it raised the issue of whether § 8.2 is enforceable before the Court of Appeals, the panel did not decide that issue, and that the Panel's opinion and mandate addressed only the interpretation of § 8.2, without resolving whether § 8.2 should be held unenforceable. In particular, SOLIDFX argues that the Tenth Circuit did not resolve the "willful and wanton issue." (*See* ECF No. 461 at 1.) Therefore, argues SOLIDFX, this Court should revisit its own conclusion that § 8.2 may be enforced, should reverse that ruling, and should reinstate the award of lost profit

damages which the Tenth Circuit vacated.

SOLIDFX's Motion argues two related grounds for declining to enforce § 8.2. First, SOLIDFX argues that the jury's liability findings, including that Jeppesen engaged in fraudulent concealment and misrepresentation, are equivalent to finding willful and wanton conduct, and that Colorado case law "prevents a breaching party from hiding behind a contractual damages limitation after engaging in willful and wanton conduct." (ECF No. 441 at 6 (citing *U.S. Fire Ins. Co. v. Sonitrol Mgmt. Corp.*, 192 P.3d 543 (Colo App. 2008) and *Core-Mark*, 300 P.3d 963).) Second, SOLIDFX argues that "[t]he central premise for [this] Court's enforcement of Section 8.2—that it did not bar SOLIDFX's direct lost profit damages—collapsed when the Tenth Circuit ruled," and "[b]ecause [the Tenth Circuit's] reading of Section 8.2 does indeed 'limit damages to an unconscionable degree,' this Court should hold the damages limitation unenforceable." (ECF No. 441 at 6.)

SOLIDFX attempts a subtle procedural argument, but one that is nonetheless indisputably foreclosed by the Tenth Circuit's mandate. To be sure, the Tenth Circuit might have been more explicit in addressing SOLIDFX's "willful and wanton" argument. Nevertheless, the Tenth Circuit's opinion refutes all the arguments that SOLIDFX re-raises here.

In a lengthy discussion that is fatal to SOLIDFX's argument, the Tenth Circuit reasoned that courts may not "draft a better contract for the parties than they did for themselves," generally "will uphold an exculpatory provision . . . between two established and sophisticated business entities," that "parties are free to agree" to such provisions, "even if [they] severely . . . restrict [a party's] ability to recover," that "[b]ut

8

for" the waiver of lost profit damages, "Jeppesen would not have waived the license fee," that "[e]ven if" a different provision "would have been a better deal for SOLIDFX, it is not the bargain it made," that the Tenth Circuit's interpretation "does not leave SOLIDFX without a remedy," that the Court "*must enforce* the unambiguous exclusion of lost profits contained in Subsection 8.2.1," and that "*the verdict must be vacated to the extent it includes lost profits of any stripe*":

> ***[I]t is not the business of the courts to draft a better contract for the parties than they did for themselves***. *See Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 820 (Colo. 2002) ("[C]lear and unambiguous provisions cannot simply be rewritten by the courts"); *Kansas City Life Ins. Co. v. Pettit*, 99 Colo. 268, 61 P.2d 1027, 1028 (1936) ("It is elementary that neither this court nor any other court can make a new contract in lieu of the one originally entered into by the parties themselves."). "The intent of the parties to a contract is to be determined primarily from the language of the instrument itself." *Ad Two, Inc. v. City & Cnty. of Denver ex rel. Manager of Aviation*, 9 P.3d 373, 376 (Colo. 2000). As discussed, Subsection 8.2.1 [of the license agreement] unambiguously establishes the parties' intent to preclude recovery by either party of any lost profits.
>
> Furthermore, ***"[a]s a general rule, courts will uphold an exculpatory provision in a contract between two established and sophisticated business entities that have negotiated their agreement at arm's length***." *Rhino Fund, LLLP v. Hutchins*, 215 P.3d 1186, 1191 (Colo. App. 2008); *see also CompuSpa, Inc. v. Int'l Bus. Machs. Corp.*, 228 F.Supp.2d 613, 626–27 (D. Md. 2002) ("[T]here is no public policy against enforcement of limited liability clauses for abandonment of a contractual obligation, even if deliberate."). Even if the relevant contract provision "may severely if not completely restrict [a party's] ability to recover for [the relevant] breach of contract, ***parties are free to agree to such provisions***." [*Imaging Sys. Int'l, Inc. v. Magnetic Resonance Plus, Inc.*, 490 S.E.2d 124, 127 (1997)]. Indeed, parties to a contract "must be able to confidently allocate risks and costs during their bargaining

9

without fear that unanticipated liability may arise in the future, effectively negating the parties' efforts to build these cost considerations into the contract." *Vanderbeek v. Vernon Corp.*, 50 P.3d 866, 871 (Colo. 2002).

Both SOLIDFX and Jeppesen agreed they would bear the risk of their own lost profits and forego other damages as identified in Section 8.2. And, in the License Agreement itself, they explained the reason for their decision to limit the damages available in the event of breach:

> 8.4 <u>Effect of Limitation</u>. The parties acknowledge that the limitations set forth in this Section are integral to the amount of fees specified within this Agreement, and recognize that were Jeppesen to assume any further liability beyond that set forth herein, such fees could be substantially higher.

In other words, SOLIDFX expressly waived its ability to recover several types of damages, including lost profits, and waived the warranties listed in Section 8.1.5. But for these waivers, Jeppesen would not have waived the license fee to access its proprietary toolkits. The inclusion of this acknowledgment further supports the reading of Section 8.2.1 as meaning exactly what it says: "NEITHER PARTY WILL HAVE ANY OBLIGATION OR LIABILITY WHATSOEVER ... FOR LOSS OF USE, REVENUE OR PROFIT." ***Even if an agreement to limit only consequential lost profits would have been a better deal for SOLIDFX, it is not the bargain it made.***

***And this interpretation does not leave SOLIDFX without a remedy as it contends.*** SOLIDFX and Jeppesen both contractually waived the right to recover lost profits in Subsection 8.2.1; the damages listed in Subsection 8.2.2 with respect to the products and services provided under the License Agreement; and the defect and nonconformance damages described in Subsection 8.2.3. But they did not exclude reliance damages—damages incurred when products or services promised under the License Agreement were not provided. Such damages "includ[e] expenditures made in preparation for performance or in performance, less any loss that the party in breach can prove with reasonable certainty the injured party would have suffered had the

> contract been performed." Restatement (Second) of Contracts § 349; see also *Bunch v. Signal Oil & Gas Co.*, 505 P.2d 41, 43 (Colo. App. 1972) ("The fact that plaintiff failed to prove his damages concerning loss of profits will not prevent his recovery for actual expenditures made in reasonable reliance on the performance of the contract or made because of the breach of the contract.").
>
> Here, SOLIDFX originally claimed $173,000 in "wasted costs," which SOLIDFX's expert explained were not lost profits but were "monies that were spent by SOLIDFX because Jeppesen did not adhere to the terms of the contract." Although SOLIDFX's expert included wasted costs in her original damage calculations, SOLIDFX omitted them from the damages it sought at trial. ***Essentially, SOLIDFX made the tactical decision to drop its claim for the type of damages available under the License Agreement in the hope of recovering the much greater sums it claimed as lost profits.*** But SOLIDFX was bound by the terms of the License Agreement, including the exclusion of any lost profit damages. And because it did not offer the evidence of "wasted costs" to the jury, SOLIDFX has not made a record of the damages recoverable under the License Agreement.
>
> In summary, ***the Licensing Agreement unambiguously precludes either party from recovering lost profits***. \* \* \* Although Section 8.2 greatly limits the available damages either party can recover in the event of breach, it is not the courts' role to create or enforce a different contract than the one the parties negotiated. ***We must enforce the unambiguous exclusion of lost profits contained in Subsection 8.2.1. Accordingly, the verdict must be vacated to the extent it includes lost profits of any stripe.***

*SOLIDFX,* 841 F.3d at 836–38 (emphasis added). This language constitutes part of the mandate which this Court must apply. *Proctor & Gamble*, 317 F.3d at 1126. The Court has little difficulty concluding that the language excerpted above places clear "limitations on the scope of the remand," and has "specifically cabined" the scope of this

Court's discretion regarding what issues may be heard on remand.  *See Dish Network*, 772 F.3d at 864.

Furthermore, the concluding paragraph of the Tenth Circuit's opinion forecloses the relief which SOLIDFX seeks, holding without equivocation that "*lost profits are not recoverable*," and "vacat[ing] the portions of the jury's verdict that awarded $20,922,500 in lost profits from SOLIDFX's projected iPad app sales during the initial term of the contract; $21,385,500 for lost business value based on anticipated lost profits after the initial contract term; and $615,000 for lost profits for tailored terminal charts for the iRex device." *SOLIDFX*, 841 F.3d at 843.  Thus, the Tenth Circuit vacated exactly those damages which SOLIDFX asks this Court to reinstate, having held they "*are not recoverable*" and that the Court "*must enforce . . . Subsection 8.2.1*." *Id.* at 838, 843 (emphasis added).  This language leaves no discretion for the Court to find § 8.2 unenforceable.

For all these reasons, the enforceability of § 8.2, which SOLIDFX asks the Court to revisit, is among those "questions which the mandate laid at rest," and which this Court therefore "cannot consider."  *Estate of Cummings,* ___ F. 3d at ___, 2018 WL 577695, at *5.  SOLIDFX's efforts to escape the Tenth Circuit's mandate are unavailing. SOLIDFX invokes the case law articulating a "presumption in favor of a general remand." (ECF No. 441 at 7 (citing *United States v. West*, 646 F.3d 1121, 1126 (10th Cir. 2003)).)  But this is neither an open-ended general remand nor a circumstance where the Court of Appeals was not presented with the issues now re-raised by SOLIDFX on remand.  *See* note 4, *infra*.

12

SOLIDFX's reliance on *Cook v. Rockwell International Corporation*, 790 F.3d 1088 (10th Cir. 2015) is also unavailing. (*See* ECF No. 461 at 5–6.) In *Cook*, a first appeal addressed only federal statutory claims, while leaving undisturbed the legally sufficient grounds to enter judgment on independent state law claims. *See id.* at 1101. Unlike the specific vacatur of damages here, in *Cook* the Tenth Circuit open-endedly directed "further proceedings not inconsistent with this opinion." *Id*. at 1102. When the district court then declined to enter judgment in favor of plaintiffs' state law claims, the Tenth Circuit reversed, noting that it "happens all the time," that "a district court on remand . . . will enter a new judgment in the same party's favor on the existing record *if one can be had unaffected by the error found in the appeal*." *Id.* (emphasis added). None of that applies here, where the Court is not addressing a separate claim or an independent ground for awarding the same damages which the Court of Appeals has explicitly vacated, and SOLIDFX's argument for such reinstatement is directly affected by the same "error found in the [first] appeal."

Finally, SOLIDFX's insistence that the Tenth Circuit "did not determine the willful and wanton issue" misses the mark by framing the issue too narrowly. (*See* ECF No. 461 at 6–7.) The controlling question is not simply the "willful and wanton issue" or the correct application of *Core-Mark* and related authorities, but both more simply and more generally, whether § 8.2 is enforceable. The Tenth Circuit has resolved that issue unequivocally. Moreover, although the Tenth Circuit's opinion did not expressly use the words "willful and wanton," SOLIDFX argued exactly this same contention before the

13

Tenth Circuit, citing the same authorities.[4]  The Tenth Circuit heard and rejected those arguments, holding the Court "must enforce" § 8.2.  *SOLIDFX*, 841 F.3d at 838.

Thus, even if this Court were inclined to reconsider the enforceability of § 8.2, the mandate rule precludes it.  The Court therefore need not reach any additional questions raised by SOLIDFX's Motion.  SOLIDFX's subsidiary request for a new trial to prove that Jeppesen's conduct was willful and wanton (to the extent that might differ from the existing fraud findings) also must be rejected.  (*See* ECF No. 441 at 20.)  The Tenth Circuit's mandate does not leave open the possibility that some additional factual showing in a second trial might prove § 8.2 unenforceable.  Moreover, a request for a new trial is an "extreme remedy" which is "disfavored and rarely granted."  *See Crew Tile Distribution, Inc. v. Porcelanosa Los Angeles, Inc.*, 2017 WL 6729621, at *4 (D. Colo. Dec. 29, 2017) (internal quotation marks and citations omitted).  The Court will not contemplate such relief on the basis of SOLIDFX's underdeveloped, one-paragraph request.  Similarly, SOLIDFX's request for oral argument on its Motion (ECF No. 441 at 20) is denied, since the issues raised are readily resolved "on the papers."

---

[4] *See, e.g.,* SOLIDFX, LLC's Opening-Answer Brief, Doc No. 01019523640 at 44–46, Case No. 15-1079 (10th Cir. Nov. 13, 2015) (arguing—exactly as SOLIDFX argues here—that under *Core-Mark* and related authorities, the damages limitation set by § 8.2 of the license agreement should be found unenforceable as a consequence of Jeppesen's fraudulent or willful and wanton conduct).

## IV.  CONCLUSION

For the reasons set forth above, Plaintiff SOLIDFX, LLC's Motion to Reconsider (ECF No. 442)[5] is DENIED.  This includes denial of SOLIDFX's request for a new trial and request for oral argument.

Dated this 9th day of February, 2018.

BY THE COURT:

William J. Martinez
United States District Judge

---

[5] The Motion itself was originally filed under restriction and is at ECF No. 441; the public docket entry reflecting the pending motion is at ECF No. 442.